Nutter *v.* Vickery.

WALTER B. NUTTER, executor, in equity,
*vs.*
GEORGE W. VICKERY, *et als.*

Isaiah Vickery gave in his will, among other bequests, to his wife, six hundred dollars a year in money during her natural life; to his sister Sally McKenney, (who was dead when the will was made, but whose ten children and three grand-children, the offspring of a deceased child, were her heirs and survived the testator) a legacy of twelve hundred dollars; and the residue of his estate "to the lawful heirs of" his sisters Sally McKenney, (aforesaid,) Mary Hanscom, (deceased, leaving as her heirs one child and one grand-child, whose parent was dead,) Louisa Bradman, (deceased, whose heirs were her six children,) and those of his brother George W. Vickery, (who was living and had seven children at the testator's death) "equally"—and appointed the plaintiff his executor:—*Held,* that by virtue of R. S., c. 74, § 10, the ten children of Sally McKenney, took each one-eleventh and her three grand-children the other eleventh of the $1200 bequeathed to her; that the residue of the estate should be divided into twenty-six equal parts, of which the ten children of Sally McKenney, the six children of Louisa Bradman, the seven children of George W. Vickery, and the child of Mary Hanscom, were entitled to one each, the three grand-children of Sally McKenney, to one, and the grand-child of Mary Hanscom, to one in the right of their deceased parents respectively.

*Held,* further, that the bequest of the life annuity to the widow created a duty in the nature of a trust, and the testator having appointed no trustee, nor made any provision for the appointment of one, it became the duty of the executor, as such, to fulfil it,—that for this purpose such portion of the interest bearing securities belonging to the estate as should seem to the judge of probate sufficient to pay the annuity and all incidental expenses including taxes on the fund, and probate charges and commissions, should be appropriated for that purpose, and the residue might be distributed as above. But as the testator had made no provision for such appropriation, the payment of the widow's annuity in full must be considered as charged on the residue, and the executor should take from each recipient of a share therein, security satisfactory to the judge of probate for the refunding of so much of said share as might ultimately be found necessary, by reason of unforeseen casualties, to make good the annuity to the widow.

BILL IN EQUITY.

This is an amicable bill brought under R. S., c. 77, § 5, by the executor of the will of Isaiah Vickery, late of Cape Elizabeth, deceased. The testator made his will on the twenty-third day of

October, 1873, and died the following day. Thirty-one persons, supposed to be immediately or contingently interested, were made parties defendant to the bill, the purpose of which was to obtain a construction of the second, third and seventh clauses of the will aforesaid, which are recited in the opinion. The second clause gave an annuity to the testator's wife, during her life. By the third, $1200 were given to his sister, Sally McKenney, who had died about six months before. The seventh was the residuary clause, giving the residue of the estate, after the payment of debts, legacies and annuity "to the lawful heirs of Sally McKenney, Mary Hanscom, George W. Vickery and Louisa Bradman, equally."

The complainant desired this court, sitting in equity, to inform him whether or not he was to be considered as trustee of the residuary estate for the purpose of raising and paying the annuity to the widow, no trustee being specifically designated by the will; and if the executor was to be held as trustee, what amount he should hold in trust for the purposes aforesaid; and if not trustee to whom should he turn over the property. As to the third clause he asked whether or not it reverted to the general estate, by reason of the death of the legatee before the will was executed, or if it should be paid to her heirs; and for instructions as to the mode of distributing the residuary estate under the seventh clause, and what persons were entitled thereto, and in what proportions.

*Joseph A. Locke* complainant's solicitor.

Upon the question whether or not the executor was trustee, Mr. Locke cited R. S., c. 77, § 5, item seventh; *Howard* v. *American Peace Society*, 49 Maine, 288; *Baldwin* v. *Bean*, 59 Maine, 481.

As to the amount to be retained, *Orr* v. *Moses*, 52 Maine, 287. Whether the devise to Sally McKenney lapsed or not, she having left lineal descendants, R. S., c. 74, § 10; *Snow* v. *Snow*, 49 Maine, 159. The court must determine the testator's intention in view of the fact that he then knew, when he executed the will, that Mrs. McKenney was dead.

Under the residuary clause, does the word heirs mean children or issue, said George W. Vickery being alive, and what proportion

does each child receive, and what do the three Jordan children take who are children of Susan D. Jordan, who was a daughter of Sally McKenney?

*Butler & Libby* solicitors for certain of the heirs of Sally McKenney. The question that concerns our clients is whether the twelve hundred dollars bequeathed by the third clause is to be treated as a lapsed legacy, or whether it descends to the children of the person named as legatee, under R. S., c. 74, § 10. This statute is substantially as first enacted February 6, 1784. 1 Laws of Mass., 111. Other states have similar statutes and such a one was passed in England in 1838. It is to be construed liberally. *Paine* v. *Prentice*, 5 Metc., 396. Ordinarily, the question arises as to the effect of the death of a person made a legatee, who dies after the execution of the will; but the principle is the same, and the sense of justice as strong, in the case of one dying before its execution. *Martin's Appeal*, 40 Penn., 111; *Winter* v. *Winter*, 5 Hare, 306; *Mower* v. *Orr*, 7 Hare, 473. The gift of the residuum "to the legal heirs," &c., must be taken as a word of purchase—*designatio personarum*—and signifying children. Else the gift to the heirs of the living brother would be void, since no one is heir to the living. *Head* v. *Horton*, 1 Denio, 165; *Otis* v. *Prince*, 10 Gray, 581; *Morton* v. *Barrett*, 22 Maine, 257; *Mace* v. *Cushman*, 45 Maine, 250.

*J. H. Drummond* solicitor for the testator's widow, Mary W. Vickery. The executor cannot purchase an annuity. *Everett* v. *Carr*, 59 Maine, 325. The legacy to one already dead is void. 1 Jarman on Wills, 311, 312, and notes. And R. S., c. 74, § 10, does not reach such a case.

The residue is to be distributed "equally" among the children and grand-children of the persons named in the seventh item. *Wheeler* v. *Allen*, 54 Maine, 232.

BARROWS, J. The plaintiff who is executor of the last will and testament of the late Isaiah Vickery, making said Vickery's numerous legal heirs devisees and legatees parties respondent, seeks in

this amicable bill, brought under the seventh item of R. S., c. 77, § 5, a construction of certain provisions of the will, and directions from the court as to the mode in which he shall execute the trust therein confided to him. The will was made and executed October 24, 1873, and duly admitted to probate November 18, 1873.

The questions arise under the second, third, and seventh items of the will, which are as follows :

"Second. I give and bequeath to my beloved wife, Mary M. Vickery, all my household furniture, beds and bedding, clothing, books and pictures, and all the provisions I may have on hand at the time of my decease, and six hundred dollars a year in money during her natural life.

"Third. I give and bequeath to Sally McKenney twelve hundred dollars.

"Seventh. The rest and residue of my estate, real and personal, I give and bequeath to the lawful heirs of Sally McKenney, Mary Hanscom, George W. Vickery, and Louisa Bradman equally."

Prior to the making of the will, Sally McKenney a sister of the testator named in the third item had died, leaving ten children and three grand-children named as respondents in the bill, who were her legal heirs.

George W. Vickery, the testator's brother, whose heirs are mentioned among the residuary legatees in the seventh item, was and still is living and has a farm devised to him under the fourth item of the will. He had seven children alive at the time of the testator's death.

One child and one grand-child of Mary Hanscom named in the seventh item, a deceased sister of the testator, were the legal heirs of said Mary when the will was made, and at the death of the testator.

Six children of Louisa Bradman, a sister of the testator, deceased prior to the making of the will, were the legal heirs of said Louisa, and all living at the death of the testator.

Hereupon the following inquiries are addressed to us :

I. Is the executor trustee of so much of the property as shall suffice for the payment of the annuity to the widow during her life ; and if so, how much should be reserved for that purpose ?

II. Are Sally McKenney's heirs entitled to the sum bequeathed to her by the third item ?

III. To whom and in what próportions is the remainder to be distributed under the residuary clause ?

It seems to be conceded that the property is sufficient to meet all the bequests and provisions contained in the will and leave something to pass under the residuary clause, and what we have to say is predicated upon that hypothesis.

I.  It must be regarded as the settled law of this state that whenever any interest in the nature of a trust, or any power or duty implying a trust is created by a will, and there is no special designation of the executor or any other person as trustee nor any provision in the will for the selection or appointment of a trustee, it is incumbent upon the executor, as such, to administer the estate according to the provisions of the will. *Pettingill* v. *Pettingill*, 60 Maine, 411, 423 ; and cases there cited. Hence it is incumbent upon the executor in the present case to provide out of the estate for the payment of the life annuity of six hundred dollars to the widow.

He has no power (none being given by the will) to purchase an annuity except by the consent of all parties beneficially interested in the provisions of the will or the estate of the deceased. *Everett* v. *Carr*, 59 Maine, 336, 337.

The interest of the residuary legatees is of course subject to the payment of all the previous bequests to individuals. But it does not necessarily follow that the entire remainder of the estate must be left in the hands of the executor during the life of the annuitant.

How much shall be retained ?  And under what conditions may there be a present distribution of the remainder among those who shall be found entitled under the residuary clause ?  No general answer, applicable in all cases to such questions as these, can be given. The decision must always depend upon the apparent intentions of the testator as they may be ascertained from the whole will carefully construed. In *Orr* v. *Moses*, 52 Maine, 287, where the testator gave a life annuity of $350 to his mother and sisters

and the survivor of them, and the residue of his estate to his wife and son "subject to the payment of the annual sum of three hundred and fifty dollars" aforesaid, he also in the same clause directed that his "executrix should retain in her hands and properly invest a sum sufficient to pay the annuities"—the sum so retained and invested to be paid over at the decease of the annuitants to the residuary legatees ; and thereupon this court held, (we think rightly) that it was the duty of the executrix to invest a sum apparently sufficient and in the exercise of ordinary care and prudence likely to remain sufficient, to produce the sum required for the payment of the annuities, with commissions and contingent expenses (such as taxes and the like) due regard being had to the future as well as the present in determining the amount and mode of the investment, and thereafterwards the annuitants must abide the fate of the investment.

Should the same course be pursued and the same result follow where the testator gives no specific directions for the setting apart of a sum sufficient to meet the call for the annuity ? The power of the court to direct that a certain part of the estate should be set apart for the payment of an annuity seems to be unquestioned. In *Slanning* v. *Style*, 3 Peere Williams, 336, where the testator had charged the residue of his estate with the payment of an annuity and the property consisted as in the case at bar largely of bonds and securities, the chancellor ordered that such part thereof as might be sufficient to preserve the annuity be brought before the master. See also *Foyer* v. *Butler*, 8 Sim., 441. But beyond this arises the question whether the legatee is to suffer the loss consequent upon a partial failure of the fund appropriated for its payment. Some of the English cases favor a rule more stringent for his protection against unforeseen contingencies than that which was adopted by this court in *Orr* v. *Moses*, above cited.

See *May* v. *Bennett*, 1 Russ. Chanc. Cas., 370, where a testator directed his executors to invest in what government securities they saw fit so much money as would produce a certain annual interest to be paid to his wife during life and widowhood, and the exec-

utors accordingly invested in the five per cents a sum which yielded the precise amount of the specified income; yet when the dividends were diminished by the conversion of the five per cents into four per cents, Gifford, master of the rolls, held the widow entitled to have the deficiency made good either by the sale from time to time of portions of the appropriated stock or out of any other part of the residue which could be reached.

And in *Davis* v. *Wattier*, 1 Sim. & Stu., 463, where a testator had directed an annuity to be paid out of his personal estate, and in the course of the proceedings a certain sum of five per cent. stock had been ordered to be set apart to meet it when the fund became insufficient by the conversion of the five per cents into four per cents, Leach, vice chancellor, directed the deficiency to be supplied out of another fund, to which other persons interested in the residue, had been declared to be entitled.

The English doctrine seems to be that in all cases where the annuity bequeathed is a charge upon the whole of the personalty, the legatee's right to the full amount of the annuity is not liable to be affected by any appropriation which the executor can make. *Gordon* v. *Bowden*, 6 Madd., 342; *Boyd* v. *Buckle*, 10 Sim., 595. If, however, the investment is made in a particular stock in conformity with the expressed or presumed intention or direction of the testator, the English court leaves the legatee to abide the result. So in *Kendall* v. *Russell*, 3 Sim., 424, a testator gave the yearly sum of £2000 to his wife for life, and after her decease, to his trustees upon the same trusts as thereinafter declared concerning another yearly sum of £3000, which he gave to his trustees, to issue out of a sufficient sum of stock in the five per cents to be invested in the name of his trustees for that purpose, for the benefit of his daughter and her children. Whereupon the trustees invested £100,000 in the five per cents to meet both the annuities. And when it was afterwards converted into four per cents and the dividends thereby became insufficient to pay the annuities, Shadwill, V. C., held the legatees of the annuities not entitled to have the deficiency supplied out of the residuary estate.

The object of inquiry in all the cases is the same. It is to ascertain and fulfil the wish and intention of the testator.

In view of the condition of parties and estates in this country we are satisfied that this is best done in cases like *Orr* v. *Moses*, 52 Maine, 287, where the testator has evidently contemplated the setting apart of a sum sufficient to provide for the annuity by following the rule laid down in that case, subjecting the estate once for all to the appropriation of a sum apparently sufficient to meet all, except remote and unforeseen contingencies, and holding the annuitant to abide the result. Faithfully and carefully administered there is no great danger of loss to the annuitant, and the distribution of the residue of the estate is not postponed until those entitled to it are so scattered by death and removal that the testator's kindness is altogether frustrated, or becomes so far as they are concerned of little worth.

But when as in the will under consideration there is nothing to indicate that the testator contemplates any such appropriation or segregation of a part of the property to provide for the annuity, and only a naked remainder is given to collateral kindred as residuary legatees, the right of the annuitant is clearly paramount and we think a present distribution among the residuary legatees can only be ordered where an appropriation is made with the consent and approbation of the annuitant, or upon condition that each residuary legatee shall give security satisfactory to the judge of probate, to refund so much of the share he receives as may hereafter be found necessary to made good the annual payments required from the estate.

This course is sometimes pursued when a legacy is given payable upon a contingency. The residue is paid over to the residuary legatee upon his giving substantial security to cover the contingency. *Webber* v. *Webber*, 1 Sim. & Stu., 311.

The executor is instructed to set apart with the approval of the judge of probate such and so much of the interest-bearing securities belonging to the estate as shall be deemed sufficient to meet the annual payments to the widow and cover taxes, com-

missions and probate charges, and thereafterwards upon receiving an order of distribution of so much of the residue as shall be found available at present, to take from each recipient of a share under the residuary clause, security as above.

II. We are satisfied, upon reason, principle and authority, that the lineal descendants of a relative of the testator having a bequest in the will are entitled to the legacy given to their ancestor by virtue of R. S., c. 74, § 10, though the original legatee was in fact dead at the date of the will. The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and in order to effect its object it should be construed liberally, as remarked by Hubbard, J., in *Paine* v. *Prentiss*, 5 Metc., 399. Any other interpretation of the statute which has been the law of this state for nearly a century we think would be liable to operate harshly and adversely to the intent of the testator almost universally.

The adverse argument is based upon the distinction between lapsed and void devises, and the assumption that the statute takes effect only in cases of lapse. But no such limitation of its effect is found in the statute, the intent of which obviously is to save to the lineal descendants of the person named as devisee in the will, the benefit of a devise which would at the common law fail of effect by reason of the death of the original devisee before the testator. The statute has regard rather to the class of individuals for whose relief it is interposed, than to any technical distinction in the manner of the failure against which it proposes to guard them. As to them the result at the common law would be the same whether their ancestor died before or after the date of the will, if he died before the testator. Against this result, in either case, the statute places a barrier.

Our conclusion is in unison with those authorities to which our attention has been called. Martin's Appeal, 40 Penn., 111; *Winter* v. *Winter*, 5 Hare, 306; *Mower* v. *Orr*, 7 Hare, 473. The result is, that under the third item of the will, the ten surviving children of Sally McKenney will take each one-eleventh and her

three surviving grand-children the remaining eleventh of the $1,200 therein given to her.

III. It is plain that the word heirs construed with technical accuracy would not express the real intention of the testator in the residuary clause. George W. Vickery's seven children were doubtless included in the testator's mind among the recipients ; but as George was in full life those children were not technically speaking his heirs. Yet it would be wrong to defeat the manifest intention of the testator by excluding them.

It is not quite so clear that he meant to include the three grand-children of Sally McKenney, or the grand-child of Mary Hanscom, although they unquestionably were heirs to his deceased sisters.

In the popular acceptation one's children are his heirs, if he has children. Yet the grand-children are perfectly within the description given of the residuary legatees. They are (speaking with legal exactness) heirs respectively of Sally McKenney and Mary Hanscom, and entitled to their parents' portion in those estates.

So situated they cannot be excluded when we admit the heirs presumptive of George W. Vickery to participate in the benefits of the residuary clause.

Upon the whole we think the intention of the testator will be best met by reading the word "heirs" in the residuary clause as if it were "children," and then following the statute rule before adverted to, which gives to the children of the deceased children the shares which their parents would respectively have taken, had they survived.

The result is that the residue of the estate is to be divided into twenty-six shares, one of which goes to each of the twenty-four living children of the testator's sisters and brother named in the seventh item of his will, one to the three Jordan children, and one to Madeline Hanscom—these last being respectively declared entitled to the shares which their parents would have received, had they survived.

Subtle, logical and technical refinements could hardly fail to be mischievous, if we should attempt to apply them to language

manifestly used without any comprehension of its technical import. *Decree to be entered in conformity herewith. Costs of all parties to be paid out of the estate.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.