H. G. DARDEN et al. v. Y. J. HARRILL.

1. WILLS. Executor. Legatees estopped. When. A testator, after making provision by his will for his wife, and equally dividing the residue of his estate among his children who were required to account for advancements, appointed an executor, and directed him to act without going into court except to have the will probated, and without giving bond or qualifying as usual. A few days after the testator's death, an agreement was drawn up and signed by the widow and ten of the twelve living children, in which the signers bound themselves to abide by the provisions of the will, and agreed to hold the acts of the executor under it valid without his going into court

.to give bond and qualify. The executor proceeded to act accordingly, for seven years, making settlements with the legatees, and payments to them of their share of the assets realized. *Held*, upon bill filed by seven of the children, all of whom except one had signed the agreement, to hold the executor to account as executor *de son tort*, that the complainants were estopped to object to what had been properly done and that the executor could only be held to account as a trustee by agreement for the legatees, with the usual powers of an executor.

2. SAME. *Evidence.* The bill having alleged that the will was duly probated, and the executor having admitted the fact in his answer, evidence as between the parties was· inadmissible to show the contrary.

3. SAME. *Descent.* The will divided the testator's property equally amongst his children naming them, two of them being at that time dead to the knowledge of the testator, the descendants of these deceased children took the shares of their parents under the Code, section 2196.

4. SAME. *Conveyance of land by testator to his children. Lien. Liability of conveyee.* The testator conveyed land by deed to some of his children, taking from each child a note for so much of the purchase money as he supposed would be the share of the child in his estate, making the note payable at his death, or sooner if the child undertook to sell the land, retaining a lien on the face of the deed for the payment of the purchase money. *Held*, that such child was liable on the note for any excess over his equal share of the estate, if the share proved to be less than the amount of the note.

## FROM HICKMAN.

Appeal from the Chancery Court at Centreville. G. H. NIXON, Ch.

TURLEY & SON for complainants.

MOORE & BATE for defendants.

COOPER, J., delivered the opinion of the court.

On March 13, 1872, Alfred Darden departed this life, leaving him surviving a widow, twelve children,

and the descendants of two other children who died in his lifetime. Five days before his death, he made and published a last will. By this instrument he gave to his wife and youngest child certain lands and personalty for and during the life of the wife, and directed that $2,000 be retained by the executor, the interest to be used for the benefit of the said wife and child. At the death of the wife, the land and personalty so given are directed to be sold, and the youngest child made equal with the rest of the children out of the proceeds. The balance of the proceeds of sale, with the $2,000, after deducting necessary charges and expenses, and all lands he may die seized and possessed of, to be divided equally between his children named in the will. He then directs all his property not included in the foregoing provisions, and except such as may be exempt from execution, to be sold to the highest bidder. His executor is required to take charge of all his papers and claims of every character, collect the same and pay all just debts. Then follows this clause: "And all receipts which I hold against my children, and advancements made, where there are no receipts for the same, be held and considered as so much of their respective shares of my estate." By the next clause, he directs that his estate, after the payment of all necessary charges, be equally divided between his children, naming them, and including the two who were then dead, but who had left children. "All to be done," he says, "by my executor without going into court except to have this will probated." He appoints Y. J. Harrill his ex-

ecutor, adding: "Whom I direct to do and transact everything herein directed without giving bond or going into court, or qualifying as in other cases." No record of the probate of this instrument is found in the minutes of the county court. But it appears that the executor, and two of the four attesting witnesses went before the county court for the purpose of proving it. The executor and one of these witnesses testify that the witnesses were sworn, and the will proved by their testimony before the court. The other witness testifies that the chairman of the county court was buried on that day, and no successor having been appointed the probate was postponed, and he never went back.

On March 15, 1872, Harrill, the executor, drew up an agreement in writing to be signed by the widow and children, and which was signed on the same day by the widow and ten of the children and the husbands of three of these children. This instrument recites that the parties signing, naming them, "have interests in the estate of Alfred Darden, deceased, under his will, and have a great desire that his will be carried out." Then follow the following clauses: "We therefore consent and agree with each other, and hereby bind ourselves to abide by and acquiesce in all the bequests and provisions of the said will of Alfred Darden, deceased, have knowledge of its provisions and bequests, and believe the same to be equal. We further agree and bind ourselves to accept the bequests, and hold valid and binding the acts and doings of Y. J. Harrill, executor of said will, in carrying out the directions and provisions of the same, and

carrying out all contracts in lands, making conveyances where the same have not been made, holding valid the acts of said executor in winding up said estate, without going into court to give bond or qualify, as provided in said will."

Harrill, the executor named, proceeded to act as such, without giving bond or otherwise qualifying as required by law for executors. He sold all the personal chattels not embraced in the first clauses of the will, and collected the debts due the estate, and paid the debts of the testator. The debts due the estate were principally in the form of notes given for land, having from one to four years to run to maturity. From time to time, he seems to have made payments to the legatees on their legacies. Two of these legatees, namely Henry G. Darden and Jane Anderson, the latter by note signed also by her husband James M. Anderson, were indebted to the testator by notes given for land conveyed to them by the testator, retaining a lien for the payment of the purchase money. The executor credited these notes with the share of the parties in the fund for distribution, taking their receipts also for so much paid on their legacies. In 1878, the executor made application to these parties for a settlement of their notes without success, and thereupon filed separate bills against them respectively to enforce the lien reserved on the land. On August 21, 1879, Henry G. Darden, James M. Anderson and wife, and five of the other children of the testator filed this bill against Harrill, and the residue of the children, and the descendants of the two children who

were dead, stating the foregoing facts except the fact of the execution of the agreement of the 15th of March, 1872, which is exhibited with Harrill's answer, and except also that it charges that the will was admitted to probate. The bill seeks to charge Harrill as executor *de son tort* of the testator's will, and calls for an administration account. The main object of the bill, however, is to have it declared that the notes of Henry G. Darden and Anderson and wife were not intended by the testator to be debts, which would bear interest from his death, but advancements as of the date of his death. All of the complainants, except Sarah A. Hassell, a daughter of the testator, are parties to the agreement of the 15th of March, 1872. The only answer filed is by Harrill, and he consents to the account asked for. The chancellor made a reference to the master to take the account, and upon the coming in of the report and the exceptions filed thereto, undertook to settle the principles governing the rights of the parties, and again referred it to the master to recast the account accordingly. And he permitted the complainants to appeal before the account was taken.

The bill expressly alleges that: "At the —— term, 1872, of the county court of Hickman county, the county of the testator's domicil, said will was admitted to probate." The answer of the defendant Harrill concedes that the will was regularly probated. As between these parties any evidence to establish the contrary was inadmissible. Moreover, the entire relief asked for is based upon the fact of the validity of

the will.   No issue is anywhere made to the contrary.
And the principal complainants, in fact all except Sa-
rah A. Hassell, are parties to the written agreement
by which they stipulated that they would abide by the
provisions of the will.    And Sarah A. Hassell has
plainly acquiesced in the views of her co-complainants
by making common cause with them, as well as by
receiving her share of the estate from the defendant
Harrill.

Whether an executor can rightfully act as such
without having first taken out letters testamentary, and
qualifying by taking an oath for the faithful perform-
ance of his duty, or avoid the consequences which
usually follow a neglect to file an inventory and make
settlements in court, are questions which may admit
of little doubt in ordinary cases.    But the complain-
ants are clearly estopped to make them in this case.
All of the complainants, except one, have, as we have
seen, expressly covenanted and agreed in writing to
abide by the provisions of the will, and to hold valid
the acts of the executor without his going into court,
and qualifying in the usual way.    And all of them
have sanctioned the actions of the executor by making
settlements with him from time to time, and receiving
their share of the funds of the estate realized by him.
Third persons might question his authority, but the
complainants cannot.    As to them he is a trustee by
contract clothed with the usual powers of an executor,
and may be held to account, and may claim to ac-
count accordingly.    The agreement was not only a
contract between the children and the widow, who had

different rights, but a family settlement, upon a strictly legal as well as equitable basis. All persons interested in the estate have acquiesced in its terms, and sustained and approved what has been properly done under it. If the defendant Harrill is found to have acted wrongfully in any particular he can, of course, be held to account for the consequences, but in the absence of any injurious default he must be treated as a trustee executing the agreement of the parties.

The bill concedes that the descendants of the two children of the testator who were dead at the making of the will, would take the devise or bequest to the children. The Code, sec. 2196, so expressly provides.

This brings us to the real object of this bill, which is to enjoin the bills filed by the executor against Henry G. Darden and James M. Anderson, to enforce the vendor's lien on the land bought by them respectively from the testator, and to have the notes given for the purchase money declared to be advancements, not debts. The note of Henry G. Darden to his father, dated October 26, 1871, is thus worded: "Due Alfred Darden or order one thousand dollars for a tract of land, the same on which I now live, which I have this day purchased of him, payable at the death of said Alfred Darden, or whenever I shall sell and transfer said land to any other person." The conveyance of the testator to Anderson and wife was made on August 9, 1870, for the consideration of $1,500, for which he took their two notes, one due January 1, 1873, for $300, and the other for $1,200, payable at the death of the testator, or whenever An-

derson and wife should sell the land. The deed of conveyance recites these facts, and retains a lien on the land until the purchase money is paid.

The will of the testator plainly shows an intent on his part that his children should share equally in his estate, to which end they were required to account for advancements. The parol testimony further shows that such was the testator's intent during life, and that this intent was kept in view in all of his dealing with his children. Some of his children had moved to Texas, and another intent disclosed by the language of the deeds to Henry G. Darden and Anderson and wife, and by the notes for purchase money executed by them to him, was that they should not dispose of the property conveyed during his life. It fully appears that the testator supposed that the share of each of his children in his estate would be about $1,200, and that when he conveyed land to either of them, he took the purchase notes with a view to this fact. Thus he conveys to Anderson and wife land worth $1,500, and took from them one note made payable at a fixed time for $300, which it was distinctly understood they were to pay. The other note was made payable at the death of the testator, unless Anderson and wife undertook to sell or transfer the land in his lifetime. In the latter event, he reserved the right to treat the purchase money as a debt, which he might at once collect. If no sale were made in his lifetime, then he expected that Anderson and wife would receive a share of his estate equal in amount to the note, which would thereby be extinguished. The note of Henry

G. Darden was given and received under the same expectation.

It turns out in fact that the share of each child will not be $1,200 as of the death of the testator, but a less sum. And the question is whether, in that event, the testator intended that these children should receive a larger share of the estate than the other children, and therefore entitled to a surrender of the note, or only to an equal share with the other children, and therefore bound for the amount of the note beyond the share? To ask the question is to answer it. For the intention of the father beyond all doubt, as to which there is not the least conflict in the testimony nor on the face of the will, was that his children should share equally in his estate. And the notes were taken for the purchase money of the land, and lien retained for their payment expressly to secure this equality. A mistake on his part as to the probable *quantum* of the share of each child cannot possibly be allowed to control the general intent so fully disclosed. The money due by the notes was clearly a debt, which might be, and he expected would be satisfied by the child's share in his estate. The form of the transactions, and the testimony introduced in relation to them, leave not a particle of doubt of the correctness of the conclusion.

The most of the exceptions to the master's report filed by the complainants, to which our attention is called, were intended to raise the questions considered in the foregoing part of the opinion. They are settled by the conclusions announced. Exception No. 4 is

Darden *v.* Harrill.

based on the form of the receipt produced for a payment. The receipt is not in the record, and, as recited in the exception, would be · *prima facie* good. Exception No. 7 goes only to an omission in the report, which will no doubt be supplied upon the re-reference. Exception No. 12, to the calculation of interest on the payments to the legatees is not well taken, because the master has calculated interest on all funds received by the executor from the receipt to the same common date. Exception No. 13 relates to an act of the executor in purchasing in land for the estate in satisfaction of the debt due thereon. The executor seems to have acted with the approval of the legatees, who have made no complaint in regard to it until the exception was filed.

The chancellor's decree was correct, and will be affirmed, and a decree may be drawn up here in conformity with this opinion, and the cause remanded. The complainants will pay the costs of this court.