WILLIAM L. TODD and FRANCIS C. PINKHAM, Executors of the last Will of Melville Gambrill, late of the City of Wilmington and State of Delaware, deceased,

*vs.*

MARY T. GAMBRILL, ELIZABETH BILLINGSLEY, WILLIAM L. TODD, ALICE EDWARDS HOLLIDAY, MARGARET EDWARDS, HESTER ANN EDWARDS VANCE, BESSIE EDWARDS CLAVEY, PEARL EDWARDS MARTIN, CARRIE EDWARDS, PAUL EDWARDS, HARRY EDWARDS, ABBIE EDWARDS DAVIS, WILLIAM T. BILLINGSLEY, MILDRED BILLINGSLEY OSBORN, ENDA BILLINGSLEY SMITH, MARIE GAMBRILL STEWART, ARMANELLA GAMBRILL SMITH, E. ELLSWORTH GAMBRILL, BERTRAND E. GAMBRILL, LENITA GAMBRILL VANNEMAN, SALLIE BILLINGSLEY MEREDITH, FLORENCE BILLINGSLEY COX, MINNIE BILLINGSLEY WALTERS, ELSIE BILLINGSLEY ELY, ELI BILLINGSLEY, EDWARD BILLINGSLEY, JAMES LINCOLN TODD, MARY TODD, LYDIA TODD WEBSTER, ELIZABETH TODD, EDITH YEATMAN GORSUCH, EVELYN YEATMAN NEWCOMB and HESTER YEATMAN.

*New Castle, May 6, 1927.*

*Charles F. Curley*, for complainants.

*William Prickett*, for the children of Clara Yeatman.

*J. Rankin Davis*, for the other defendants.

THE CHANCELLOR. In the absence of a statutory provision to the contrary, there is no doubt upon this, viz., that Clara Yeatman's children could not under any theory be brought into the group of residuary legatees. Being only grandnieces, they could not answer to the description of nieces, nor could they indirectly share in the residue through the instrumentality of an administrator for their mother's estate, because at the date of the will their mother was dead. If the testator, when he made his will had thought he was including her among the nieces and nephews described, yet, she being dead at the time, any legacy to her was void.

But it is contended on behalf of her children, this cannot now be the result in view of our statutory provision found in *Section* 3389, *Code* of 1915. That section is in part as follows:

"No devise or legacy in favor of a brother or sister, or children of a deceased brother or sister, of any testator, dying after the fifteenth day of March, A. D. 1909, such testator not leaving any lineal descendant, shall be deemed or held to lapse, or become void by reason of the decease of such devisee or legatee, in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator; saving always to every testator the right to direct otherwise."

This statute, it is argued, is applicable alike to legacies that are technically known as void legacies as well as to legacies that are technically known as lapsed ones. If the statute is not applicable to void legacies, then the case in behalf of Mrs. Yeatman's

children is conceded to be without merit, and in that event further discussion is unnecessary.

The first question, therefore, to be decided is whether or not void legacies are embraced within the scope of our statute. This statute was originally enacted March 15, 1909 (25 *Del. Laws, c.* 223). Its title was "An act to prevent the lapsing of certain devises and legacies." It will be observed that the title of the act is confined to cases of "lapsing," But in the body of the act the expression is that no legacy, etc., shall be deemed or held "to lapse or become void." It is argued by the solicitor for Mrs. Yeatman's issue that the phrase "or become void" must be taken to extend the saving force of the statute to legacies that are technically void, as well as to those that are lapsed. Had the phrase been "or to be void," there would be a greater arguable inference in this regard, for the word "become" connotes the idea of futurity; that is, of something that once was good but by reason of a future event later became void. If the phrase "or to become void" were the sole turning point on which the construction hinged, I should have to conclude that void legacies were not within the meaning of the statute. The phrase seems to be but a synonymous expression of the phrase "to lapse." So that we are to read the statute as though its body used only the word "lapse"; and this is in harmony with the title of the act as originally passed, which mentions only "lapsing."

Regarding the statute then as an act whose language makes no specific mention of void legacies, does it follow that such legacies are not embraced within its saving provisions? I think not, because the authorities are decidedly to the effect that the word "lapse" in statutes of this nature is not to be taken in its rigid technical sense. Such statutes are regarded as remedial in nature, and designed to mitigate the harshness of the common law rule by which legacies and devises were voided and the intent of the testator ofttimes frustrated. The thing which the Legislatures were thought by the courts to be legislating against by the enactment of such statutes, was the avoiding of bequests and devises by harsh rules of law, and the principle of the cases is that the general spirit of such statutes is directed against the idea of avoidance of legacies and is not concerned with the technical forms into which

the common law cast the two types of avoidance which arose out of the death of the legatee during the testator's life. Hence it is that the courts in England and for the most part in America have refused to attribute to the word "lapse," when it appears in statutes of the kind we are here considering, its strict technical meaning. In Pennsylvania the statute is almost identical with ours and in that state it has been held that a legacy to one who was dead at the time of the making of the will, though void at common law, was saved by the statute to the legatee's surviving issue. *Spencer's Estate*, 37 *Pa. Super. Ct.* 67. In other jurisdictions where the word "lapse" alone appears in the statute, without the phrase "or become void," as in the statute of this state and in Pennsylvania, the same result is reached; that is, a legacy to one who is dead at the date of the will, a technically void legacy, is regarded as lapsed within the meaning of the statute and is accordingly saved to those whom the statute designates as entitled thereto. *Winter v. Winter*, 5 *Hare*, 306; *Mower v. Orr*, 7 *Hare*, 473; *Wisden v. Wisden*, 2 *Sm. & Giff.* 396; *Barkworth v. Young*, 4 *Drew.* 1; *Barnes v. Huson*, 60 *Barb.* (*N. Y.*) 598; *Pimel v. Betjemann*, 183 *N. Y.* 194, 76 *N. E.* 157, 2 *L. R. A.* (*N. S.*) 580, 5 *Ann. Cas.* 239; *Kehl v. Taylor*, 275 *Ill.* 346, 114 *N. E.* 125, *Ann. Cas.* 1918D, 948.

I conclude that our statute against the lapsing of legacies and devises applies equally to those cases where the legatee or devisee is dead at the time of the making of the will as to those cases where the beneficiary dies in the interval between the date of the will and the date of the death of the testator. If, therefore, Mrs. Yeatman was intended by the testator to be included in the group of nephews and nieces mentioned in the residuary clause (paragraph twenty-nine of the will), the circumstance that she was dead at the time of the making of the will cannot serve to withhold from her children the share which would have gone to her had she been living and survived her brother, the testator.

The general rule above referred to is so widely accepted that only two American jurisdictions are stated by Cullen, C. J., in *Pimel v. Betjemann, supra*, to be out of line with it. But upon the question of whether, when there is a gift to a class, a legacy to one who if living would answer to the description of the class but who was dead at the time of the making of the will would be saved by

the statute, there is a divergence of opinion among the cases. Such a case was presented in *Pimel v. Betjemann, supra,* in New York. In that case there was a direction to pay to each of the testator's children the sum of five hundred dollars. One child was dead, when the will was executed and then known by the testator to be dead. The Court of Appeals by a four to three decision, while adhering to the rule previously laid down in *Barnes v. Huson, supra,* to the effect that legacies which are technically void fall within the saving grace of the lapsing statute, nevertheless held that where the gift was to a class whose individual membership was not named there could be no saving of the legacy in favor of the issue of one who predeceased the execution of the will but who if he had been living would have answered the description of the class. And so in that case, the issue of the deceased child was held by a closely divided court to be not entitled to the legacy as substitutes for their deceased parent. "The question," said the prevailing opinion, "is not as to the effect of the statute, but as to the intent of the testator." That is to say, the question was not whether a legacy bequeathed had become void, but whether any legacy had been given. The court said no legacy had been given, because the bequest was to children; and grandchildren, whose mother, the testator's child, was known by him to be dead at the making of the will, could not in law answer to the description of children which was the word employed by the testator. That this New York rule is in accord with the weight of authority is very doubtful. See *Kehl v. Taylor, et al., supra,* where the cases are collected and discussed. It is not necessary for me to enter upon an examination of the authorities with the view of determining the rule which should be adopted in this class of cases in this jurisdiction, because in the view I take of the will here involved it seems to me clear that the testator intended that his niece, Mrs. Yeatman, should be counted among the nieces and nephews to whom with the three persons specifically named the residue was given.

I say this because the testator in an earlier paragraph of his will, paragraph ten, quoted in the statement of facts preceding this opinion, treated her as a living person. He mentioned her as one of his nieces and gave her a legacy of ten thousand dollars in exactly the same manner as he gave a similar legacy to nineteen

other nephews and nieces who so far as appears were all living. I see no escape from the thought that he treated her as a niece in being. In this particular the case is stronger than in *Guitar, et al., v. Gordon, et al.*, 17 *Mo.* 408, where a mere mention by the testator of his deceased daughter precisely as he spoke of his living children was held to indicate an intention on his part to include her in a residuary bequest to his children. The mentioning of her was not in the way of giving her a legacy as was the case here with respect to Mrs. Yeatman. It was simply by way of reciting that he had made an advancement to her. In the instant case the testator in the tenth item of his will gave Mrs. Yeatman the legacy of ten thousand dollars as he did his living nephews and nieces and then provided for the contingency of her death before his as he did also with respect to a similar ten thousand dollar legacy to each of the other nineteen nephews and nieces. If he knew of her death, why did he not name her children by name in the tenth item, or as a class, as the takers of that legacy? Manifestly he desired them to take the ten thousand dollars in place of their mother if she should be dead. Yet he expressed this desire in a manner that is hypothecated on the assumption that she was then living. The substitutionary clause together with the naming of her clearly impels me to take this view.

Now having shown that the testator regarded his niece, Mrs. Yeatman, as living when he wrote the tenth paragraph of his will, what reason can there be to assume that when he spoke generally of his nieces in the twenty-ninth paragraph he thought of her as dead? It would appear clear then that the intent of the testator was to include Mrs. Yeatman in the class of nieces and nephews mentioned in the twenty-ninth paragraph. If such was his intent, the law will give effect to that intent, for the cardinal principle of all testamentary interpretation is to ascertain the intent and, unless it be contrary to law, to give it full force and effect. Paragraph twenty-nine is, therefore, to be read as though the nieces and nephews had been named and Mrs. Yeatman's name had been included in the enumeration. If this had been done, the residuary bequest to her would have been technically void. But she being in the degree of relationship mentioned in the statute, the technically void gift to her would have been saved to her children by the

statute's substitutionary provision in their favor. Our Supreme Court in dealing with this statute has held that the intent of the testator must prevail; and that where such an intent is manifest that, if the statute against lapsing should operate, the wishes of the testator would be frustrated, the statute's application should be denied. *Brewer v. Curtis*, 7 *Boyce*, 204, 105 *A*. 420; *Id.*, 7 *Boyce*, 503, 108 *A*. 673. Conversely, even in those states as in New York where the lapsing statute is held inapplicable to a void legacy because the gift is to a class, there may be an intent manifest in the will, which will notwithstanding the rule of the jurisdiction to the contrary, bring the statute into play. This was recognized in the prevailing opinion in *Primel v. Betjemann*, *supra*, where the rule which excluded the issue of one who was dead at the making of the will from participation in a gift to a class was said to prevail only "of course in the absence of something in the will or surrounding circumstances to show a different intent."

Even conceding, therefore, without deciding that the residuary gift here was to a class as that term is to be understood, and conceding further without deciding that in class bequests and legacies the lapsing statute has no application to a legacy to one who but for his death at the time the will was executed would be a member of the class, yet in the instant case a sufficient intent to embrace the deceased member of the class in its category is sufficiently apparent to justify the conclusion that the statute is applicable to that member's share.

Thus far it follows that Mrs. Yeatman's children are to stand in her place as sharers in the residue given by the twenty-ninth paragraph.

There remains only one more thing to discuss which is urged as tending to destroy the force of the foregoing conclusion. I refer to the contention that, if Mrs. Yeatman's children are to be treated as entitled to one of the residuary shares, then it will be necessary to divide the residue into thirty-one equal parts. To do this, it is argued, would be contrary to the testator's desire that the division should be into only thirty equal parts. From the testator's use of thirty as the denominator of the residuary fractional parts it is argued that he must have never intended Mrs. Yeatman's name to be included in the group. This argument is

more plausible than persuasive. It ignores the fact that the dominant intent of the testator was to benefit his and his wife's nieces and nephews. If he had correctly counted those whom, according to the intent appearing on the face of the will, he meant to include, he would have made thirty-one instead of thirty the divisor. In such a large number, many of whom were not his own kin, it was not at all improbable that he should make a mistaken count. To say that because he counted the nephews and nieces as twenty-seven must have never intended to count Mrs. Yeatman among them is to assume that he could not have forgotten the existence of one of the others. Why should that assumption be made when it appears that he spoke of Mrs. Yeatman elsewhere in his will as though she were a person in being? His treating her in the tenth paragraph as though living, makes it more reasonable to assume that he overlooked in his count some other niece or nephew of his own or of his wife, than to assume that he counted the rest correctly and purposely omitted her. The principle controlling this aspect of the case is stated in 28 *R. C. L. p.* 263, as follows:

"When a governing intention to benefit the children of a certain person appears from a will, coupled with a mistake in the number of those children, the dominant intention to benefit the persons so described must be given effect by rejecting the inaccurate enumeration.

Let a decree be submitted in favor of admitting the children of Mrs. Yeatman to the share she would have taken if living.