EARL H. ACKERMAN, ADMR.
*vs.*
J. ALBERT HUGHES, CONSERVATOR

Superior Court        Fairfield County        File No. 64174

MEMORANDUM FILED JULY 3, 1942.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich, for the Plaintiff.

*L. J. Vail* and *L. E. Sisson,* of Greenwich, for the, named Defendant:

*W. X. Burns,* of Greenwich, for the other Defendants.

Memorandum of decision in action to construe will.

O'SULLIVAN, J. This is an action to construe the will of Agnes Walton Savage, who died at Greenwich on August 24, 1939, leaving her husband, Arthur Savage, surviving her. The ninth paragraph of the will reads as follows and furnished the difficulties: "Ninth: All the rest, residue and remainder of my estate I give and bequeath to my three brothers, William Brady, Brampton, Chesterfield, Derbyshire, England; John Brady, Elder Yard, Chesterfield, Derbyshire, England; James Brady, Newbold Road, Chesterfield, Derbyshire, England, each to receive an equal one-third portion."

The will was executed on June 26, 1939. On that date, all of the brothers mentioned in the ninth paragraph were dead, events of which the testatrix was unaware. William had died in England in 1930; James, in 1933, and John, in 1935. Only James and William left issue who survived the testatrix.

The estate is ready for distribution but the administrator c.t.a.d.b.n. is uncertain as to whom he should distribute. He propounds three questions, which include the following query: is the share of each brother to be deemed intestate estate, in view of his death prior to the execution of the will?

The answering of this question is as far as the court feels justified in going because of the import of the first paragraph of the will, which reads: "I have made no provision for my husband, as for some time he has failed to support me or furnish me with a home." The inference is that the testatrix and her husband were living apart at the time the will was executed, a date only two months prior to her death. To

pass upon the right of her husband to share in her estate, as a portion of the three questions require if they are to be answered in full, might cause embarrassment later on if it should develop that he had abandoned his wife and had continued such abandonment, without sufficient cause, to the time of his wife's death. Under such circumstances, he would be barred from enforcing his statutory rights in the enjoyment of the estate. (Gen. Stat. [1930] §5156.)

The general rule, in the absence of any statutory provision to the contrary, is that a legacy to a person who is dead at the time of the execution of the will is void. *Clifford vs. Cronin,* 97 Conn. 434, 438. The vital problem in this case, then, is whether or not this common-law principle has been abrogated for the benefit of certain named close relatives of the testatrix, by force of section 4879 of the General Statutes, Revision of 1930. The portion of the statute applicable to the facts at hand reads: "When a....legatee, being a.... brother....of the testator, shall die before him, and no provision shall have been made in the will for such contingency, the issue of such....legatee shall take the estate so....bequeathed." Clearly, the statute reaches those situations where the brother dies after the will is made and before the testator's death, but does it extend to those situations, like the instant one, where the brother is dead when he is named as a legatee?

At common law, all legacies, not affected by substitutionary disposition, became intestate estate whenever the legatee died before the testator. Thus, as indicated above, a bequest to one who was dead when the will was executed was void, while a bequest to a living person lapsed at his death before that of the testator. Some pretty oppressive results were occasioned by these principles which frequently blocked the way for carrying out the testator's expressed intention. These injustices were most significant in those instances where the will provided legacies for close relatives.

Eventually, the legislatures of the various states passed acts, commonly called non-lapse statutes, to circumvent the harshness of the common-law rules. These statutes vary in scope, but they all have one common denominator. They permit a more meticulous execution of the expressed wishes of the testator.

Ours is a remedial statute and requires a liberal construction

in aid of its manifest purpose. "To arrive at the real meaning it is always necessary to. take a broad general view of the Act and to get an exact conception of its scope and purpose. It'is a cardinal rule of statutory interpretation, that the construction must, if possible, be such as will effect the real purpose for which the statute was enacted....Lord Coke prescribed four general inquiries for this purpose: (a) What was the law before the Act was passed, (b) what was the mischief or defect for which the law had not provided, (c) what remedy did the legislature prescribe, and (d) what was the reason for the remedy." *Merchants Bank & Trust Co. vs. Pettison*, 112 Conn. 652, 655.

Considering all these factors, the legislative intention, it seems to me, was not only to prevent the lapsing of legacies to those enumerated in the statute but also to preclude the voiding of bequests to similar individuals. It would indeed be shocking to believe that the statute protects a legacy to one brother in being when the will is executed and fails to afford relief for the issue of another brother, who, unbeknownst to the testator, had died five minutes before that time.

It is true that the statute uses the future tense and one might argue from that fact that it contemplates only those instances of death occurring after the will has been executed. Nonetheless, no direct language found in the statute takes any notice of the time of the execution of the will or imposes a condition to its operation or non-operation upon a legacy to a brother that he shall be alive when the will is executed. The only conditions which it mentions are that the brother shall die before the testator, and that no provision has been made in the will for such contingency. And, of course, it is available only to issue of the legatee, who may survive the testator.

The words "shall die" do not refer to the time of executing the will but to the death of the legatee before that of the testator.

I conclude, then, that the statute is to be extended to those situations where a brother of the testator is dead when the will is made.

There is no Connecticut case directly in point. *Lee vs. Lee*, 88 Conn. 404, presented a somewhat similar set of facts, and the question discussed herein was argued before our ap-

pellate court. The opinion, however, brushes the question aside and is based on another ground.

In other states which have statutes analogous to our own, the decisions are not in harmony, but the great weight of authority upholds the position that, unless the testator's intention runs to the contrary, a legacy to the named legatee, who is dead when the will is executed, does not become intestate estate, if the beneficiary belonged to one of the classes named in the statute and leaves issue surviving the testator. *Nutter vs. Vickery,* 64 Me. 490; *Minter's Appeal,* 40 Pa. 111; *Darden vs. Harrill,* 78 Tenn. 421; *Todd vs. Gambrill,* 15 Del. Ch. 342, 138 Atl. 167; *Wildberger vs. Cheek,* 94 Va. 517; *In re Hutton's Estate,* 106 Wash. 578, 180 Pac. 882; *Winsor vs. Brown,* 48 R.I. 200, 136 Atl. 434; *Kehl vs. Taylor,* 275 Ill. 346, 114 N.E. 125. See, also, *Pimel vs. Betjemann,* 183 N.Y. 194, 76 N.E. 157; *Anno.* 3 A.L.R. 1682. Contra: *Billingsley vs. Tongue,* 9 Md. 575; *Suber vs. Nash,* 84 S.C. 12, 65 S.E. 947; *Estate of Matthews,* 176 Cal. 576, a case directly opposed to *Lee vs. Lee,* 88 Conn. 404, as to the effect upon a legacy to one dying between the execution of a will and a subsequent codicil.

The claim of the named defendant that the legacies to the dead brother were gifts to a class needs no comment, first because they did not create such a gift (*Bill vs. Payne,* 62 Conn. 140), and secondly, because, if they did, the statute would still apply.

The questions submitted in the complaint are answered only to the following extent:

1. The legacy to John Brady is void and becomes intestate estate, John having died without issue surviving.

2. The legacies to James Brady and William Brady do not become intestate estate but each legacy is to be distributed to such issue of each legatee as survived the testatrix, the distribution of each legacy to be *per stirpes.*

Allowances have been requested by counsel. The following sums shall be allowed: to Hirschberg, Pettengill, Strong & Deming, $250 plus their cash expenses; to W. X. Burns, $350 plus his cash expenses; to Messrs. Sisson and Vail, $350 plus their expenses.