COLONIAL BANK AND TRUST COMPANY, EXECUTOR AND TRUSTEE (ESTATE OF GEORGE A. STEVENS, JR.) *v.* GEORGE W. STEVENS ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

32

Argued May 4—decided November 1, 1972

*David T. Ryan*, with whom, on the brief, were *Robert M. Fitzgerald* and *Louis B. Blumenfeld*, for the plaintiff.

*Harry Cohen*, for the named defendant et al.

*Edward W. Manasse*, for the defendant Donna L. Andreason et al.

HOUSE, C. J.   This action, which came before us on a reservation from the Superior Court, sought advice on several questions involving the construction, validity and legal effect of a trust created by the will of George A. Stevens, Jr., to whom we will hereafter refer as the testator.   The parties joined in requesting the reservation, agreed on nine questions to be submitted for the advice of this court and stipulated that "[t]he questions arise upon the facts admitted in the pleadings."

This court found that the record was insufficient to afford a basis for an answer to the reserved questions and remanded the case to the Superior Court for a hearing and decision or the ascertainment of additional facts necessary to an answer to the questions propounded by the parties.   *Colonial Bank & Trust Co.* v. *Stevens*, 163 Conn. 612, 316 A.2d 768.   In ordering the remand, we indicated the areas

in which we found the record to be deficient. Thereafter, the parties joined in a motion for leave to reargue and, with the permission of this court, filed a further stipulation correcting the deficiencies in the earlier record as submitted. In view of the nature of the action, the joint motion of the parties and their further stipulation, we decided to accept the reservation and consider the reserved questions on the basis of the original record as supplemented by the additional stipulation.

The testator, a resident of the town of New Milford, died on March 26, 1967, leaving a last will and testament executed on September 27, 1966. The will was duly proved, approved, allowed and admitted by the Probate Court and letters testamentary were issued to the executor therein named which, as the result of a merger, is the present plaintiff trust company, now the trustee. The executor has settled all claims against the estate and the Probate Court has accepted and approved its administration account. No assets have been turned over to the bank as trustee pending the termination of this action.

On the date of his death, the testator, a widower, left, as his sole heirs-at-law and next of kin, two sons, George and Robert, and four daughters, Mary, Katherine, Etta and Grace. They, along with their children, are the defendants. All of the children of the testator have children of their own with the exception of Robert who, at the time of the testator's death and up to the time of the bringing of this action, was unmarried. As some of the grandchildren of the testator are minors, the court appointed a guardian ad litem for those minor defendants and "for all future unborn grandchildren or great grandchildren of the decedent."

The troublesome portion of the will and the one which gives rise to the present action is Article Six,[1] which established a testamentary trust of the residue of the estate after the satisfaction of the legacies set out in Articles Two, Four and Five. Under the provisions of Article Six, the trustee is

---

[1] "Article Six

All the rest, residue and remainder of my estate, both real, personal or mixed, of whatsoever nature and wheresoever found, of which I may die seized or possessed, or over which I may have the power of disposition or appointment, I give, devise and bequeath to the LITCHFIELD COUNTY NATIONAL BANK, of the Town of New Milford, County of Litchfield and State of Connecticut, IN TRUST NEVERTHELESS, for the following purposes:

1) To take possession and control of my said estate and to invest, reinvest and keep the same invested for the following purposes:

2) To pay over to each of my six (6) children as follows:

a.) To GEORGE WILLIAM STEVENS, of Cambridgeport, Vermont; MARY E. BANKS, of the Town of New Fairfield, County of Fairfield and State of Connecticut; KATHERINE M. FRIEDMAN, of the City of Bridgeport, County of Fairfield and State of Connecticut; ETTA MAY LARICCIA, of the City of Bridgeport, County of Fairfield and State of Connecticut; and GRACE M. MCBRIDE, of the Town of Branford, County of New Haven, and State of Connecticut; the sum of Four Hundred ($400.00) Dollars per year; and

b) To ROBERT A. STEVENS, of the Town of New Milford, County of Litchfield and State of Connecticut, the sum of Six Hundred ($600.00) Dollars per year;

until the corpus of said trust, together with all accumulations of rents, profits, issue and income thereon, has been fully distributed;

3) If any of my children should pre-decease me or die during the operation of said trust, I direct that his or her share of the estate and the payments as aforesaid, shall be divided equally among his or her children, during the operation of said trust;

4) If any of my said children should die without issue, I direct that the share of the deceased child shall remain as a part of the corpus of said trust, and be distributed in accordance with the directions above, to my surviving children, equally, share and share alike."

directed to pay over to George, Mary, Katherine, Etta and Grace the sum of $400 a year, and to Robert the sum of $600 a year "until the corpus of said trust, together with all accumulations of rents, profits, issue and income thereon, has been fully distributed." While in some instances such a provision would, without more, suffice to insure a distribution of all income and corpus to designated individuals, the supplemented record discloses that from the date of the death of the testator to the present date the annual income from the residuary estate, after deducting the costs of administration, has exceeded the specified total annual payments to the beneficiaries named in the will and the reasonable probability is that without any invasion of the corpus of the trust estate the income alone will be sufficient to make all the annual payments specified in the will. The record indicates that on June 30, 1972, the trust estate had a market value of $68,427.27. Thus, the questions reserved for our advice[2] primarily concern what should be done with

---

[2] "a. Is the net income, which heretofore has accrued or in the future may accrue, in excess of the sums required for the payment of administration and other proper expenses and charges of the estate and for the payment of the annuities under said will, intestate estate?

"b. If such excess income is intestate estate, to whom and in what proportions and at what time or times should it be distributed and paid?

"c. If such excess income is not intestate estate, should it be accumulated by the plaintiff, as executor and prospective trustee, and added to the corpus of the trust estate?

"d. If such excess income is not intestate estate and is not to be accumulated, to whom and in what proportions and at what time or times should it be distributed and paid?

"e. If such excess income is to be accumulated, is such accumulation illegal or void?

"f. How should the excess income which has heretofore accrued and

the income from the trust which exceeds the required annual payments under Article Six, §§ 2 (a) and 2 (b) of the will and when, to whom, and in what proportions, the corpus should be distributed in the event that it is not exhausted by the payment of the specified annual payments.

It is clear from even the most cursory reading of the provision in question that Article Six is inartfully drafted and is, as a result, ambiguous and deficient. This fact alone, however, will never be sufficient cause to invalidate the testamentary scheme of a testator when, employing the basic rules of will construction, a court can discern with requisite precision, the true dispositive intent of the testator. "The controlling fact in the interpretation of testaments is the expressed intent as disclosed by the testator's language. This language will be read in its entirety, and with the purpose of gathering from its general scheme, scope and character, and the nature of its provisions, what the intention was. In this search for intent, purely artificial and arbitrary rules of mere literary construction can properly play but a small part, and, if allowed,

---

which may hereafter accrue be treated by the plaintiff and what disposition should be made by the plaintiff of the same.

"g. What disposition of the corpus of the trust estate should be made upon the death of the survivor of the decedent's children, to wit: The defendants, George William Stevens, Mary Elizabeth Stevens Riley, formerly Mary Elizabeth Stevens Banks, Katherine Mae Stevens Friedman, Robert A. Stevens, Etta Mae Stevens Lariccia and Grace Madelene Stevens MacBride?

"h. Is any portion of the trust corpus at the present time intestate estate inasmuch as the same is not required to produce the required annual payments to the children of the deceased?

"i. If no portion of the trust corpus is intestate estate, in what proportions and at what time and to which persons should the trustee make payment of the trust corpus after the death of the last child of the decedent?"

might easily result in an undeserved importance being attached to a purely accidental choice of words." *White* v. *Smith,* 87 Conn. 663, 668, 89 A. 272; see also *Budington* v. *Houck,* 134 Conn. 72, 76, 54 A.2d 671; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 157, 158 A. 224. "All that is required . . . is a clear expression of the testator's dispositive intent." *Mott* v. *Teagle Foundation, Inc.,* 156 Conn. 407, 413, 242 A.2d 739; *Dennen* v. *Searle,* 149 Conn. 126, 132, 176 A.2d 561; *Beardsley* v. *Merry,* 136 Conn. 573, 575, 72 A.2d 829; *Angus* v. *Noble,* 73 Conn. 56, 64, 46 A. 278. "The intent of the testator as expressed in the will as a whole is the decisive factor, however, and that intent must be determined from the language used in the light of the surrounding circumstances at the time the will was made. *Frey* v. *Greenberg,* 151 Conn. 663, 667, 202 A.2d 142; *Warren* v. *First New Haven National Bank,* 150 Conn. 120, 123, 186 A.2d 794; *Hartford Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 550, 107 A.2d 409. Included in the surrounding circumstances are the condition of the testator's estate, 'his relations to his family and beneficiaries, and their situation and condition.' *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 279, 170 A.2d 130." *First New Haven National Bank* v. *First New Haven National Bank,* 153 Conn. 490, 496–97, 217 A.2d 710.

As to the income from the trust which exceeds the annual payments required by Article Six, § 2, it is clear that it should be accumulated by the trustee and become a part of the corpus of the trust since the testamentary directive is to distribute to each beneficiary a specific sum of money regardless of whether it comes from income or from the principal of the trust. We have, on numerous occasions in

the past, indicated that we will not, absent a direction in the will, infer an intention to accumulate income in excess of the amount needed to carry out the specific provisions of the will. "[W]here the will discloses an intent that there shall be no accumulation of excess income . . . or where the will discloses no intent either way, the excess income should be distributed to those entitled to it as it accrues." *New Haven Bank* v. *Hubinger,* 117 Conn. 417, 423, 167 A. 914; see also *Belcher* v. *Phelps,* 109 Conn. 7, 18, 144 A. 659; *Shepard* v. *Union & New Haven Trust Co.,* 106 Conn. 627, 138 A. 809; *Hoadley* v. *Beardsley,* 89 Conn. 270, 280, 93 A. 535. In the case before us, however, the testator did not distinguish between income and principal as a source of the prescribed annual payments, the amount of those payments is a fixed sum and there is no named beneficiary entitled to excess income as it accrues. There is, on the other hand, an indication in the provisions of Article Six itself of an intention on the part of the testator that excess income should be accumulated. In this regard, we find it most significant that the testator specifically gave the trustee, in Article Six, § 1, not only the power to invest but also the power to "reinvest and keep the same invested." Furthermore, Article Six, § 2, which is the only provision in the will mentioning termination of the trust, indicates the expectation of the testator that the payment of the specified annual amounts would exhaust the corpus of the trust since the direction is that the annual payments shall be paid in the specified amounts "until the corpus of said trust, together with all *accumulations* of rents, profits, issue and income thereon, has been fully distributed." (Emphasis supplied.) It thus appears that the testator did envision the possibility

that there would be occasion to reinvest income and accumulate profits. Since the phrases are "fairly open to two constructions," an interpretation which, at least to some extent, avoids intestacy is preferable. *Willis* v. *Hendry,* 130 Conn. 427, 438, 35 A.2d 207; *White* v. *Smith,* supra. The answers to the first six questions are: (a) "No"; (b) not applicable; (c) "Yes"; (d) not applicable; (e) not so far as the facts in the record disclose; (f) added to the corpus.

The last three questions submitted to us by the reservation concern disposition of any portion of the income and corpus not exhausted by payment of the annual sums prescribed. Once again, the answers, if any can be found, must be gleaned from an examination of the testator's overall scheme and intention as expressed in the language of the entire trust provision. As we have noted, Article Six, § 2, directs the trustee to make the annual specified payments to the children of the testator "until the corpus of said trust, together with all accumulations . . . , has been fully distributed." One of the facts which is clearly apparent from a study of the will is that the testator anticipated that the required annual payments in the amounts specified would exhaust the corpus of the trust. As a consequence, the will makes no other provision for any final distribution of the trust corpus. Accordingly, we must conclude that any corpus of the trust and undistributed income which may remain on the death of the last surviving child of the testator must pass as intestate estate in accordance with the general rule that "where there is no disposition by will of the remainder, the corpus of the trust property on the termination of the trust goes as intestate property to the testator's heirs." 96 C.J.S. 688, Wills,

§ 1056; see also *Pond* v. *Porter*, 141 Conn. 56, 71–2, 104 A.2d 228; *Willis* v. *Hendry*, supra, 439–40.

It is true that the testator did consider and make provision for the contingency that any of his children might predecease him or die before the trust res had been fully distributed in the annual payments and for the alternative contingencies that such a child might die with or without issue. Article Six, § 3, provides that if a child of the testator should die "during the operation of said trust" leaving issue, then "his or her share of the estate and the payments as aforesaid, shall be divided equally among his or her children, during the operation of said trust." The only "share" of the testator's trust estate which the will provided for any of his children was the right to the annual payment of the specified sum. There is no suggestion in the will that the corpus of the trust should be divided into separate trusts and some portion distributed to the testator's grandchildren. On the contrary, the direction of the will is that such grandchildren are "during the operation of said trust" to share equally the distribution which the parent would have received if living. Counsel for the grandchildren contends that the words "share of the estate and the payments as aforesaid" indicate an intention that on the death of a child of the testator the trust should be divided into separate trusts and that that child's children receive an aliquot portion of the original trust. Such an interpretation of the trust provisions, however, runs counter to the further provision that the division of the "share of the estate and the payments as aforesaid" should continue "during the operation of said trust." It would also run counter to the testator's scheme of substantially equal per stirpes benefits since such an inter-

pretation would require that the grandchildren not only receive an aliquot portion of the trust but, in addition, the annual payment originally provided for their parent.

We also observe that no alternative provision for final distribution is suggested by the language in Article Six, § 4, that in the event a child of the testator should die without issue "the share" of such child "shall remain as a part of the corpus of said trust and be distributed in accordance with the directions above, to my surviving children, equally, share and share alike." "[T]he directions above" are those which provide for the specific annual payments to each child "until the corpus of said trust . . . has been fully distributed."

A construction of a will which will avoid intestacy is to be sought and to this end the presumption must be entertained that the testator did not intend intestacy as to any part of his estate. *Hartford National Bank & Trust Co.* v. *Yearly Meeting,* 137 Conn. 648, 654, 81 A.2d 104. But we cannot rewrite the will of a testator nor can we supply a dispositive provision which a will has omitted. "A construction plainly required by the terms of a will cannot be avoided because it leads to intestacy." *Morehouse* v. *Bridgeport-City Trust Co.,* 137 Conn. 209, 216, 75 A.2d 493.

We must conclude that the testator simply overlooked the possibility that the payment of the specified annual amounts to his children would not exhaust the income and corpus of the trust and, accordingly, made no provision for any termination of the trust other than by such exhaustion. Accordingly, any portion of the trust not exhausted by such payments and remaining at the death of the last surviving child of the testator must be held to

be intestate property in the estate of the testator and, as such, then pass to his heirs. Until the death of the last surviving child of the testator, the trust remains operative. Accordingly, under the provisions of Article Six, §§ 3 and 4, while the trust is thus operative, on the death of a child of the testator leaving a child or children, the amount of the specified annual payment provided for that child shall be divided equally among his or her children and on the death of a child of the testator dying without issue the annual payment specified for that child shall be distributed equally, share and share alike, among the then surviving children of the testator. Specifically, the answer to reserved question g is: It should be distributed as intestate estate of George A. Stevens, Jr.; to question h the answer is "No" and, in light of these answers question i is not applicable.

No costs shall be taxed in this court for or against any party.

In this opinion the other judges concurred.