FRED RUOTOLO ET AL. *v.* RIEFE TIETJEN,
EXECUTOR (ESTATE OF JOHN N.
SWANSON), ET AL.
(AC 25239)

Lavery, C. J., and Dranginis and McLachlan, Js.

Argued December 6, 2005—officially released January 31, 2006

*Jonathan J. Einhorn*, for the appellant (defendant Kathleen Smaldone).

*Jeffrey T. Beatty*, for the appellee (named defendant).

*Gerald E. Farrell, Sr.*, for the appellee (defendant Stella Szollosi).

*J. Michael Sulzbach*, for the appellees (defendant Marion Fessenden et al.).

*Opinion*

LAVERY, C. J. This appeal presents a question of statutory interpretation of General Statutes § 45a-441, our testamentary antilapse statute. The appellant, Kathleen Smaldone,[1] appeals from the judgment of the Superior Court on appeal from the Probate Court, which found the statute inoperative in the present case. We disagree and, accordingly, reverse the judgment of the Superior Court.

---

[1] Kathleen Smaldone is also known as Kathleen Ziegler. The plaintiffs in the appeal from probate were Fred Ruotolo and Charlene Ruotolo, while the defendants were Riefe Tietjen, executor of the estate of John N. Swanson, and Smaldone, Stella Szollosi, Yolanda Szollosi, Marion Fessenden, Geraldine Augeri and Michael Pesce. Only Smaldone has appealed to this court. For clarity, we refer in this opinion to Smaldone as the appellant and the other parties as appellees or by name.

The facts are undisputed. On March 1, 1990, John N. Swanson executed a will. The residuary clause contained therein bequeathed, inter alia, "one-half . . . of [the residue] property to Hazel Brennan of Guilford, Connecticut, if she survives me . . . ." Brennan died on January 2, 2001, seventeen days prior to the testator's death. Brennan was the testator's stepdaughter, a relation encompassed by § 45a-441. The appellant is the child of the deceased legatee, Brennan, and is a residuary legatee in the will, and, thus, was an object of affection of the testator.

On February 9, 2001, the will was admitted to probate. In a memorandum of decision dated April 26, 2002, the Probate Court concluded that, as § 45a-441 "is not operative," the bequest to Brennan lapsed and passed to the intestate estate.[2] The plaintiffs, Fred Ruotolo and Charlene Ruotolo, beneficiaries under the will, filed a motion for appeal to the Superior Court. The Probate Court issued a decree allowing the appeal. The appellant thereafter filed a cross appeal. Following a de novo hearing, the court issued a memorandum of decision affirming the judgment of the Probate Court, and this appeal followed.

The sole issue on appeal is whether the court properly concluded that the antilapse statute does not apply. Section 45a-441 has never been scrutinized by appellate eyes and, thus, presents a question of first impression. Accordingly, our review is plenary. See *Genesky* v. *East Lyme*, 275 Conn. 246, 252, 881 A.2d 114 (2005).

Pursuant to General Statutes § 1-2z,[3] we consider first the text of § 45a-441 to determine whether it is ambigu-

---

[2] The terms "bequest" and "devise" are similar but not synonymous. In *Starr* v. *Commissioner of Environmental Protection*, 236 Conn. 722, 737 n.17, 675 A.2d 430 (1996), our Supreme Court explained that a devise is equivalent to a bequest "except that it applies to land."

[3] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

ous. The statute provides: "When a devisee or legatee, being a child, stepchild, grandchild, brother or sister of the testator, dies before him, and no provision has been made in the will for such contingency, the issue of such devisee or legatee shall take the estate so devised or bequeathed." General Statutes § 45a-441. The bequest in the present case specified "one-half . . . of [the residue] property to Hazel Brennan of Guilford, Connecticut, if she survives me . . . ." Because the bequest contained the condition, "if she survives me," both the Probate Court and the Superior Court concluded that a provision had been made in the will for such contingency. The appellant disagrees, arguing that because the will contained no provision as to the fate of Brennan's share in the event that she predeceased the testator, a provision had not been made in the will for such contingency. Both readings present plausible interpretations of the salient statutory language. In light of that ambiguity, we turn our attention to extratextual evidence to determine its proper meaning. See General Statutes § 1-2z.

"According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citation omitted; internal quotation marks

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

omitted.) *Regency Savings Bank* v. *Westmark Partners,* 70 Conn. App. 341, 345, 798 A.2d 476 (2002). "A legislative act must be read as a whole and construed to give effect and to harmonize all of its parts." (Internal quotation marks omitted.) *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984). In addition, "[w]here the meaning of a statute is in doubt, reference to legislation in other states and jurisdictions which pertains to the same subject matter, persons, things, or relations may be a helpful source of interpretative guidance." (Internal quotation marks omitted.) *Johnson* v. *Manson,* 196 Conn. 309, 318–19, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986).

I

HISTORY

At common law, when a named beneficiary under a will predeceased the testator, the share of the deceased beneficiary passed not to his descendants, but rather "lapsed." See 4 W. Bowe & D. Parker, Page on the Law of Wills (Rev. Ed. 2005) § 35.15, p. 645; see also *Clifford* v. *Cronin,* 97 Conn. 434, 438, 117 A. 489 (1922). Thus, the rule of lapse automatically conditions all devises on the survival of the legatee. "At common law, all legacies, not affected by substitutionary disposition, became intestate estate whenever the legatee died before the testator." *Ackerman* v. *Hughes,* 11 Conn. Sup. 133, 135 (1942).

As Judge O'Sullivan explained in *Ackerman,* "[s]ome pretty oppressive results were occasioned by these principles which frequently blocked the way for carrying out the testator's expressed intention. These injustices were most significant in those instances where the will provided legacies for close relatives." Id. To prevent such a harsh and presumably unintended result, legislatures of the United States in the late eighteenth century

began crafting statutes designed to protect certain devises from lapsing.

In 1783, the Massachusetts legislature enacted the first antilapse statute. It provided: "When a devise of real or personal estate is made to any child or other relation of the testator, and the devisee shall die before the testator, leaving issue who survive the testator, such issue shall take the estate so devised, in the same manner as the devisee would have done, if he had survived the testator; unless a different disposition thereof shall be made or required by the will." 1783 Mass. Acts, ch. 24, § 8, quoted in S. French, "Antilapse Statutes Are Blunt Instruments: A Blueprint for Reform," 37 Hastings L.J. 335, 339 n.16 (1985). "In 1810, Maryland went even further and adopted a statute that prevented lapse altogether. . . . These two statutes provided the basic models on which all subsequent antilapse statutes have been constructed." S. French, 37 Hastings L.J., supra, 339. In England, the Wills Act of 1837 took antilapse statutes across the Atlantic Ocean, providing that "when there was a devise or bequest to a child or other issue of the testator, and the child or issue predeceased the testator, leaving issue who survived the testator, the devise or bequest should not lapse, 'but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will.' " 6 W. Bowe & D. Parker, supra, § 50.10, p. 91. Today, antilapse statutes have been enacted in every state except Louisiana. "[T]he antilapse statutes in effect across the United States vary significantly [and] so much . . . that no typical or 'majority' antilapse statute exists." E. Kimbrough, "Lapsing of Testamentary Gifts, Antilapse Statutes, and the Expansion of Uniform Probate Code Antilapse Protection," 36 Wm. & Mary L. Rev. 269, 271 (1994).

Although varying in scope, all antilapse statutes provide that when a particular devisee predeceases the testator, the devise does not fall into the residue or pass to the testator's heirs by intestacy, but rather descends to the issue of the predeceased devisee. "Although . . . commonly called 'antilapse' statutes, the label is somewhat misleading. Contrary to what the label implies, antilapse statutes do not reverse the common-law rule of lapse because they do not abrogate the law-imposed condition of survivorship. . . . What the statutes actually do is modify the devolution of lapsed devises by providing a statutory substitute gift in the case of specified relatives." E. Halbach, Jr. & L. Waggoner, "The UPC's New Survivorship and Antilapse Provisions," 55 Alb. L. Rev. 1091, 1101 (1992).[4] With that background in mind, we turn our attention to § 45a-441.

## II

## OUR ANTILAPSE STATUTE

Connecticut's antilapse statute was enacted in 1821 as part of "An Act for the settlement of Estates, testate, intestate, and insolvent." It provided: "Whenever a devisee or legatee in any last will and testament, being a child or grand-child of the testator, shall die before the testator, and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take the estate devised or bequeathed, as the devisee or legatee would have done, had he or she survived the testator; and if there be no such issue, at the time of the testator's death, the estate disposed of by such devise or legacy, shall be considered and treated as intestate estate." General Statutes (1821 Rev.) tit. 32, ch. 1, § 4. The antilapse statute today provides

---

[4] The authors of that commentary were members of the joint editorial board for the Uniform Probate Code. Professor Waggoner served as reporter of article II of the Uniform Probate Code (1990). E. Halbach, Jr. & L. Waggoner, supra, 55 Alb. L. Rev. 1091.

that "[w]hen a devisee or legatee, being a child, step-child, grandchild, brother or sister of the testator, dies before him, and no provision has been made in the will for such contingency, the issue of such devisee or legatee shall take the estate so devised or bequeathed." General Statutes § 45a-441. Other than adding siblings and stepchildren to the class of applicable devisees and legatees; see Public Acts 1987, No. 87-355, § 2; no substantive change has been made to our antilapse statute since 1821. Moreover, the pertinent language at issue in the present dispute, namely, *"and no provision shall be made for such contingency,"* was part of the original 1821 statute and remains unaltered today.

Plainly, the purpose underlying our antilapse statute is the prevention of unintended disinheritance. Its passage reflects a legislative determination that, as a matter of public policy, when a testator fails to provide for the possibility that a particular beneficiary might predecease him, the lineal descendants of that beneficiary take the applicable share.

In the years since its enactment, Connecticut courts have stated that the antilapse statute is remedial and should receive a liberal construction. See, e.g., *Clifford* v. *Cronin,* supra, 97 Conn. 438; *Ackerman* v. *Hughes,* supra, 11 Conn. Sup. 135–36. When a dispute arises regarding application of that statute, therefore, the burden rests on the party seeking to deny the statutory protection.

Under Connecticut law, the antilapse statute applies unless a "provision has been made in the will for such contingency . . . ." General Statutes § 45a-441. A review of the antilapse statutes presently in effect in forty-eight other jurisdictions reveals that this language is unique to our statute. It is not disputed that the "contingency" referenced in § 45a-441 is the death of a devisee or legatee prior to that of the testator. What is contested

is the proper construction of the "provision has been made in the will" language.

The appellees contend that inclusion of words of survivorship in a will constitutes a provision for such contingency, thereby rendering the antilapse statute inapplicable. Because the bequest in the present case contains the condition "if she survives me," they claim § 45a-441 is inoperative. That simple and seemingly persuasive argument fails, however, on closer examination.

First, it is significant that the language at issue dates back to 1821, the inception of our antilapse statute. The first antilapse statute, enacted in Massachusetts in 1783, provided that it would apply "unless a different disposition thereof shall be made or required by the will." 1783 Mass. Acts, ch. 24, § 8, quoted in S. French, supra, 37 Hastings L.J. 339 n.16. The Maryland statute enacted in 1810 contained no such condition.[5] Like every other antilapse statute that followed, ours was modeled on those statutes. Today, a majority of jurisdictions contain some variation of the "unless a different disposition thereof" condition.[6] See Ark. Code Ann. § 28-26-104

---

[5] The Maryland statute provided: "That from and after the passage of this act, no devise, legacy or bequest, shall lapse or fail of taking effect by reason of the death of any devisee or legatee named in any last will or testament, or any codicil thereto, in the life-time of the testator, but every such devise, legacy or bequest, shall have the same effect and operation in law to transfer the right, estate and interest, in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." 1810 Md. Laws, ch. 34, § 4, quoted in E. Kimbrough, supra, 36 Wm. & Mary L. Rev. 274 n.35.

[6] The antilapse statutes of sixteen states operate unconditionally. See Ala. Code § 43-8-224 (1991); Ga. Code Ann. § 53-4-64 (b) (1997) ("unless there appears a clear intent of the contrary" provision applicable only to class gifts); Idaho Code § 15-2-605 (Michie 2001); Ind. Code Ann. § 29-1-6-1 (g) (LexisNexis 2000); Minn. Stat. Ann. § 524.2-6031 (West 2002); Miss. Code Ann. § 91-5-7 (2004); Mo. Rev. Stat. § 474.460 (2000); Neb. Rev. Stat. § 30-2343 (1995); N.H. Rev. Stat. Ann. § 551.12 (1997); N.J. Stat. Ann. § 3B:3-35 (West 1983); N.D. Cent. Code § 30.1-09-05 (1996); Okla. Stat. Ann. tit. 84, § 142 (West 1990); 20 Pa. Cons. Stat. Ann. § 2514 (9) (West 2005); S.C. Code Ann. § 62-2-603 (Law. Co-op. 1987); S.D. Codified Laws § 29A-2-603 (Michie 1997); Wyo. Stat. Ann. § 2-6-106 (2005).

(2004) ("[u]nless a contrary intent is indicated by the terms of the will"); Cal. Prob. Code § 21110 (b) (Deering 2004) ("issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition"); Del. Code Ann. tit. 12, § 2313 (b) (2001) (section shall not apply in case of wills wherein provisions have been made for distribution of property different from this section); Fla. Stat. Ann. § 732.603 (West 2005) ("[u]nless a contrary intention appears in the will"); 755 Ill. Comp. Stat. Ann. § 5/4-11 (West 1992) ("[u]nless the testator expressly provides otherwise in his will"); Iowa Code Ann. § 633.273 (2) (West 1992) ("unless from the terms of the will, the intent is clear and explicit to the contrary"); Kan. Prob. Code Ann. § 59-615 (a) (West 1994) ("unless a different disposition is made or required by the will"); Ky. Rev. Stat. Ann. § 394.400 (same) (LexisNexis 1999); Md. Code Ann. Est. & Trusts § 4-403 (a) (LexisNexis 2001) ("[u]nless a contrary intent is expressly indicated in the will"); Mass. Ann. Laws ch. 191, § 22 (Law. Co-op. 1994) (same); Nev. Rev. Stat. § 133.200 (2003) ("in the absence of a provision in the will to the contrary"); N.Y. Est. Powers & Trusts Law § 3-3.3 (a) (McKinney 1998) ("[u]nless the will whenever executed provides otherwise"); N.C. Gen. Stat. § 31-42 (a) (2005) ("[u]nless the will indicates a contrary intent"); Ohio Rev. Code Ann. § 2107.52 (B) (West 2005) ("[u]nless a contrary intention is manifested in the will"); Or. Rev. Stat. Ann. § 112.395 (West 1990) ("[u]nless otherwise provided in the will of the testator"); R.I. Gen. Laws § 33-6-19 (1995) ("unless a contrary intention shall appear by the will"); Tenn. Code Ann. § 32-3-105 (a) (2001) ("unless a different disposition thereof is made or required by the will"); Tex. Prob. Code Ann. § 68 (e) (Vernon 2003) ("unless the testator's last will and testament provides otherwise"); Vt. Stat. Ann. tit. 14, § 558 (2002) ("unless a

different disposition is required by the will"); Va. Code Ann. § 64.1-64.1 (2002) ("[u]nless a contrary intention appears in the will"); Wash. Rev. Code Ann. § 11.12.110 (West 1998) ("[u]nless otherwise provided"); W. Va. Code § 41-3-3 (LexisNexis 2004) ("unless a different disposition thereof be made or required by the will"); Wis. Stat. Ann. § 854.06 (4) (a) (West 2002) ("section does not apply if there is a finding of contrary intent of the decedent"). Thus, although the precise wording of the condition in our antilapse statute is unique, its existence is not. Like other states, Connecticut enacted its statute to counteract the harsh results of the common-law rule of lapse. Like other states, Connecticut conditioned operation of the antilapse statute on the intent of the testator as expressed in the will. Accordingly, the critical inquiry is whether an intent contrary to § 45a-441 is so manifested.

Our inquiry into whether words of survivorship evince a contrary intent sufficient to defeat the antilapse statute is guided by the following principles. Antilapse statutes "will apply unless testator's intention to exclude its operation is shown with reasonable certainty." 6 W. Bowe & D. Parker, supra, § 50.11, p. 96. Section 5.5 of the Restatement (Third) of Property, Wills and Other Donative Transfers (1999), addresses antilapse statutes.[7] Comment (f) to that section provides in relevant part: "Antilapse statutes establish a strong rule of construction, designed to carry out presumed intention. They are based on the constructional preference against disinheriting a line of descent . . . . Consequently, these statutes should be given the widest

_____

[7] "Antilapse statutes typically provide, as a rebuttable rule of construction, that devises to certain relatives who predecease the testator pass to specified substitute takers, usually the descendants of the predeceased devisee who survive the testator." 1 Restatement (Third), Property, Wills and Other Donative Transfers § 5.5, p. 381 (1999).

possible sphere of operation and should be defeated only when the trier of fact determines that the testator wanted to disinherit the line of descent headed by the deceased devisee." 1 Restatement (Third), Property, Wills and Other Donative Transfers § 5.5, comment (f), p. 383 (1999). Hence, the burden is on those who seek to deny the statutory protection rather than on those who assert it.

Finally, we are mindful that our statute was enacted to *prevent* operation of the rule of lapse.[8] Our statute is remedial in nature and must be liberally construed. *Clifford* v. *Cronin*, supra, 97 Conn. 438; *Ackerman* v. *Hughes*, supra, 11 Conn. Supp. 135–36. Accordingly, we resolve any doubt in favor of the operation of § 45a-441.

The bequest at issue states, "one-half . . . of [the residue] property to Hazel Brennan of Guilford, Connecticut, *if she survives me . . . .*" (Emphasis added.) Our task is to determine the significance of those words of survivorship. While the present case is one of first impression in Connecticut, numerous other states have considered the question of whether words of survivorship, such as "if she survives me," demonstrate a contrary intent on the part of the testator sufficient to negate operation of the antilapse statute.

### III

### OTHER AUTHORITY

Whether words of survivorship alone constitute sufficient evidence of a contrary intent on the part of the

---

[8] In ascertaining the intent and meaning of a particular statute, Lord Coke prescribed four general inquiries: "(a) What was the law before the Act was passed, (b) what was the mischief or defect for which the law had not provided, (c) what remedy did the legislature prescribe, and (d) what was the reason for the remedy." *Merchants Bank & Trust Co.* v. *Pettison*, 112 Conn. 652, 655, 153 A. 789 (1931). As our Supreme Court noted, "the meaning of legislative language . . . is best understood by viewing not only the language at issue, but by its context and by the purpose . . . behind its use." *Frillici* v. *Westport*, 231 Conn. 418, 431 n.15, 650 A.2d 557 (1994).

testator so as to prevent application of the antilapse statute is a question on which sibling authority is split. Some courts have concluded that words of survivorship demonstrate sufficient contrary intent. Illustrative of that line of cases is *Bankers Trust Co.* v. *Allen*, 257 Iowa 938, 135 N.W.2d 607 (1965). In that case, the Supreme Court of Iowa stated: "The bequest to Mary in Item III is conditioned on her surviving the testator. We have held many times . . . that our antilapse statute . . . does not apply to a bequest so conditioned. . . . This is on the theory that a bequest to one 'if she survives me' manifests an intent that the bequest would lapse if the named beneficiary dies before the testator." (Citations omitted.) Id., 945; see also *In re Estate of Todd*, 17 Cal. 2d 270, 109 P.2d 913 (1941); *In re Estate of Stroble*, 6 Kan. App. 2d 955, 960, 636 P.2d 236 (1981) ("when the testator uses words of survivorship in the will expressing an intent that the legatee shall take the gift only if he outlives the testator, the statute against lapses has no application and the expressed intention of the testator is controlling"); *Slattery* v. *Kelsch*, 734 S.W.2d 813 (Ky. App. 1987); *In re Holtforth's Estate*, 298 Mich. 708, 299 N.W. 776 (1941); *In re Robinson's Will*, 37 Misc. 2d 546, 236 N.Y.S.2d 293 (1963); *Hummell* v. *Hummell*, 241 N.C. 254, 85 S.E.2d 144 (1954); *In re Estate of Burns*, 78 S.D. 223, 228, 100 N.W.2d 399 (1960) ("if the testator uses words indicating an intention that the named beneficiary shall take the gift only if he outlives the testator, there is nothing upon which the statute can operate").

Underlying that view is the presumption that the testator knowingly and deliberately included the words of survivorship. As one New York court explained: "[T]hese words were used by the testator in a will drawn by an experienced attorney. Some meaning must be attributed to them—and the meaning is clear—that survivorship was a condition precedent to the receipt of

the residuary estate. If words were held to be devoid of meaning, then this court would be rewriting the testator's will." *In re Robinson's Will,* supra, 37 Misc. 2d 548. That presumption has pitfalls of its own, however.

Inclusion of words of survivorship provides neither objective evidence that a conversation about § 45a-441 took place nor objective evidence that the testator considered seriously the possibility of nonsurvival or inquired about the meaning of expressions such as "lapsed bequest" and the protections of the antilapse statute. "Because such a survival provision is often boiler-plate form-book language, the testator may not understand that such language could disinherit the line of descent headed by the deceased devisee. When the testator is older than the devisee and hence does not expect the devisee to die first . . . it seems especially unlikely that a provision requiring the devisee to survive the testator was intended to disinherit the devisee's descendants." 1 Restatement (Third), supra, § 5.5, comment (h), p. 385.

At oral argument, counsel for the appellees alleged that inclusion of the words "if she survives me" indicates that the testator intended for the bequest to Brennan to lapse. While plausible, it remains conjecture nonetheless.[9] As one commentary aptly stated: "The argument can reasonably be extended to urge that the use of words of survivorship indicates that the testator

---

[9] "[T]here is always some gap in time between the execution of a will and the date the will takes effect, and that during this gap death may take its toll of some or all of the intended beneficiaries. The careful draftsman, of course, foresees this situation and provides specifically in the will exactly what is to happen to the share of an intended beneficiary who dies before the testator. The careless or ignorant draftsman fails to meet the problem squarely with the result that the desire of the testator as to the disposition of his property is not expressed, and the court is forced to guess what he would have intended had the matter been brought to his attention." A. Casner, "Class Gifts—Effect of Failure of Class Member to Survive the Testator," 60 Harv. L. Rev. 751, 751 (1947).

considered the possibility of the devisee dying first and intentionally decided not to provide a substitute gift to the devisee's descendants. The negative inference in this argument, however, is speculative. It may or may not accurately reflect reality and actual intention. It is equally plausible that the words of survivorship are in the testator's will merely because, with no such intention, the testator's lawyer used a will form containing words of survivorship. The testator who went to lawyer X and ended up with a will containing devises with a survivorship requirement could by chance have gone to lawyer Y and ended up with a will containing devises with no survivorship requirement—with no different intention on the testator's part from one case to the other." E. Halbach, Jr. & L. Waggoner, supra, 55 Alb. L. Rev. 1112–13. Furthermore, words of survivorship "might very well be no more than a casual duplication of the survivorship requirement imposed by the rule of lapse, with no independent purpose. Thus, they are not necessarily included in the will with the intention of contradicting the objectives of the antilapse statute." Id., 1109–10. As this court recently observed, "[s]peculation and conjecture have no place in appellate review." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). Put simply, the intent of the testator cannot definitely be discerned on the basis of words of survivorship alone.

If he intended the bequest to lapse, the testator could have explicitly so provided. The testator also could have made an alternative devise, which "indicates a contrary intent, and hence overrides an antilapse statute . . . ." 1 Restatement (Third), supra, § 5.5, comment (g), p. 384; see also E. Halbach, Jr. & L. Waggoner, supra, 55 Alb. L. Rev. 1110 (when actually intended to call for result contrary to antilapse statute, words of survivorship likely to be accompanied by additional language). That the testator did neither in the present case informs

our consideration of whether he intended disinheritance.

The argument is further weakened by the fact that, under the interpretation of § 45a-441 provided by the Probate Court and the Superior Court, the result is not merely that Brennan's share lapses; her share passes to the intestate estate.[10] Thus, at its crux, the contention of the appellees asks us to presume that, although not explicitly provided for, the testator *intended* intestacy as to Brennan's share. That argument confounds Connecticut law, which presumes that a testator designed by his will to dispose of his entire estate and to avoid intestacy as to any part of it. See, e.g., *Colonial Bank & Trust Co.* v. *Stevens,* 164 Conn. 31, 41, 316 A.2d 768 (1972); *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 172, 104 A.2d 356 (1954); *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 750, 136 A. 588 (1927); *Beardsley* v. *Johnson,* 105 Conn. 98, 112, 134 A. 530 (1926). In addition, the bequest to Brennan was residuary in nature. "Residuary language expresses an intention to . . . avoid intestacy." *Hechtman* v. *Savitsky,* 62 Conn. App. 654, 663, 772 A.2d 673 (2001); see also *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 139,

---

[10] It is "axiomatic in this jurisdiction that, if a gift of a portion of the residue of an estate fails, that portion becomes intestate property." *Bronson* v. *Pinney,* 130 Conn. 262, 270, 33 A.2d 322 (1943); see also *Clark* v. *Portland Burying Ground Assn.,* 151 Conn. 527, 531, 200 A.2d 468 (1964); *Daboll* v. *Daboll,* 101 Conn. 142, 147, 125 A. 253 (1924); *Bristol* v. *Bristol,* 53 Conn. 242, 260, 5 A. 687 (1885); accord 6 W. Bowe & D. Parker, supra, § 50.18, p. 111 ("[i]t is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum, but that it passes to the testator's next of kin as intestate property"); but see 1 Restatement (Third), supra, § 5.5, comment (o), p. 389 (rejecting "no-residue-of-a-residue" rule); *In re Frolich Estate,* 112 N.H. 320, 326, 295 A.2d 448 (1972) (adopting rule that failure of portion of residue results in division of such portion among remaining residuary legatees). The latter rule seemingly is consistent with the presumption that a testator intends to avoid intestacy. See *Colonial Bank & Trust Co.* v. *Stevens,* 164 Conn. 31, 41, 316 A.2d 768 (1972); *Hechtman* v. *Savitsky,* 62 Conn. App. 654, 663, 772 A.2d 673 (2001).

81 A. 1057 (1912). Indulging in the presumption that the testator intended to avoid intestacy militates against a finding that he intended for Brennan's share to lapse.

Another presumption bears consideration. In *Clifford* v. *Cronin*, supra, 97 Conn. 438, our Supreme Court, quoting 2 J. Alexander, Commentaries on Wills, § 874, stated that "the testator is presumed to know the law and that his will is drawn accordingly." As one court has noted, however, "[w]ith respect to any individual, the argument of knowledge and approval of the state law is sheer fiction." *Trimble* v. *Gordon*, 430 U.S. 762, 775 n.16, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). Discounting that observation, the presumption is revealing nevertheless. If we must presume that the testator was aware of our antilapse statute, we must also equally presume that he was aware that it is remedial in nature and provided a liberal construction in Connecticut. In that event, the testator would have known that any ambiguity arising from the probate of his will, absent an express indication to the contrary, would be resolved in favor of operation of the statute.

Alternatively, another line of cases from various jurisdictions concludes that words of survivorship alone are insufficient to defeat an antilapse statute. As the Supreme Court of Appeals of West Virginia stated, "In order to prevent application of the [antilapse] statute . . . a testator must clearly and unequivocally indicate his intent that the statute not apply." *Kubiczky* v. *Wesbanco Bank Wheeling*, 208 W. Va. 456, 460, 541 S.E.2d 334 (2000); see also *In re Estate of Bulger*, 224 Ill. App. 3d 456, 586 N.E.2d 673 (1991); *Galloupe* v. *Blake*, 248 Mass. 196, 142 N.E. 818 (1924); *In re Estate of Ulrikson*, 290 N.W.2d 757, 759 (Minn. 1980); *Royston* v. *Watts*, 842 S.W.2d 876, 880 (Mo. App. 1992); *Estate of Kehler*, 488 Pa. 165, 411 A.2d 748 (1980); *In re Estate of Allmond*, 10 Wash. App. 869, 520 P.2d 1388, review denied, 84 Wash. 2d 1004 (1974).

A similar case is *Detzel* v. *Nieberding*, 7 Ohio Misc. 262, 219 N.E.2d 327 (Prob. Ct. 1966). In *Detzel*, the will provided in relevant part, "To my beloved sister, Mary Detzel, provided she be living at the time of my death . . . ." (Internal quotation marks omitted.) Id., 263. Mary Detzel predeceased the testator. Id. In considering the operation of Ohio's antilapse statute, the court noted that "[a]ntilapse statutes are remedial and should receive a liberal construction"; id., 267; echoing a precept shared by Connecticut law. Accordingly, "[a]ll doubts are to be resolved in favor of the operation of the antilapse statute . . . . [T]o render [the] statute inoperative contrary intent of testator must be plainly indicated." (Citations omitted.) Id., 266–67. The court continued: "To prevent operation of the Ohio antilapse statute when a devise is made to a relative conditioned upon the survival of the testator by the relative, and the relative predeceases the testator leaving issue who survive the testator, it is necessary that the testator, in apt language, make an alternative provision in his will providing that in the event such relative predeceases or fails to survive the testator such devise shall be given to another specifically named or identifiable devisee or devisees." Id., 274. Although we do not agree that the only way to negate operation of an antilapse statute is by providing an alternate devise, *Detzel* is persuasive nevertheless. *Detzel* has never been reversed, although another Ohio court characterized it as "clearly and completely erroneous." *Shalkhauser* v. *Beach*, 14 Ohio Misc. 1, 6, 233 N.E.2d 527 (Prob. Ct. 1968). The Uniform Probate Code, however, seems to agree with the logic of *Detzel*.

In 1990, a revised Uniform Probate Code was promulgated, which contained a substantially altered antilapse statute. Notably, § 2-603 (b) (3) provides that "words of survivorship, such as in a devise to an individual 'if he survives me,' or in a devise to 'my surviving children,'

are not, in the absence of additional evidence, a sufficient indication of an intent contrary to the application of this section." Unif. Prob. Code § 2-603 (b) (3). The comment to that section explains that this expansion of antilapse protection was necessary because "an antilapse statute is remedial in nature . . . . [T]he remedial character of the statute means that it should be given the widest possible latitude to operate" in considering whether in an individual case there is an indication of a contrary intent sufficiently convincing to defeat the statute. Id., comment. The Restatement Third of Property agrees; see 1 Restatement (Third), supra, § 5.5, comment (f), p. 383; and that proposition is consonant with Connecticut law. In sum, we agree with those jurisdictions that have held that mere words of survivorship do not defeat antilapse statutes.

## IV

## CONCLUSION

Our antilapse statute was enacted to prevent operation of the rule of lapse and unintended disinheritance. The statute is remedial and receives a liberal construction. Any doubts are resolved in favor of its operation. We therefore conclude that words of survivorship, such as "if she survives me," alone do not constitute a "provision" in the will for the contingency of the death of a beneficiary, as the statute requires, and thus are insufficient to negate operation of § 45a-441. Our conclusion today effectuates the intent of the General Assembly in enacting this remedial statute. Should a testator desire to avoid application of the antilapse statute, the testator must either unequivocally express that intent or simply provide for an alternate bequest. Because the testator in the present case did neither, the protections of the antilapse statute apply. Accordingly, the bequest to Brennan does not lapse, but rather descends to her issue.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.