COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES *v.* HOUSING
AUTHORITY OF THE TOWN
OF LITCHFIELD ET AL.
(AC 29269)

Flynn, C. J., and Lavine and Borden, Js.

Argued February 10—officially released September 15, 2009

*Kevin J. Brophy*, with whom, on the brief, was *David S. Stowe*, for the appellant (proposed intervenor Letitia Kilby).

*Michelle Dumas Keuler*, for the appellee (plaintiff).

*Joshua A. Hawks-Ladds*, with whom, on the brief, was *Christine Collyer*, for the appellees (defendants).

*Michelle H. Seagull* filed a brief for the Connecticut Fair Housing Center et al. as amici curiae.

BORDEN, J. In this housing discrimination case, the original complainant, Letitia Kilby (complainant), appeals from the judgment of the trial court denying her motion to intervene in an action brought in the Superior Court by the plaintiff, the commission on human rights and opportunities (commission). That action was brought on the request of the defendants, the housing authority of the town of Litchfield (authority) and D & H Property Management, LLC (property management company), pursuant to General Statutes § 46a-83 (d) (2).[1] The complainant claims that the court (1) improperly denied her right to intervene and, in the alternative, (2) abused its discretion in denying her permissive intervention. The defendants claim that (1) there is no final judgment for purposes of appeal because the complainant has no colorable claim for intervention as of right and (2) on the merits, the court properly denied her claim for intervention as of right and did not abuse its discretion in denying her permissive intervention. The commission claims that the complainant should be allowed permissive intervention. We conclude that (1) there is a final judgment for purposes of appeal and (2) on the merits, the court improperly denied the complainant's claim for intervention as of right. Accordingly, we reverse the judgment of the trial court.

The complainant filed an administrative complaint with the commission against the defendants, claiming

---

[1] General Statutes § 46a-83 (d) (2) provides in relevant part: "If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the Attorney General or a commission legal counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within ninety days of receipt of the complainant's or the respondent's notice of election of a civil action. . . ."

unlawful discrimination regarding her housing. After settlement discussions failed, the commission completed its investigation and found reasonable cause to believe that unlawful discrimination had occurred. The defendants requested, pursuant to § 46a-83 (d) (2), that the commission file this civil action in the trial court, and the commission complied. The complainant moved to intervene, claiming both intervention as of right and permissive intervention. The court denied the complainant's motion. This appeal followed.

The following facts and procedural history are not in dispute for purposes of the complainant's appeal.[2] Since May, 2001, the complainant has been a tenant in a housing complex located in Bantam, which is owned by the authority and managed by the property management company. The complainant has several disabilities, namely, difficulty walking, sleep apnea, chronic pain and respiratory ailments, all of which contribute to her need for reasonable accommodation.

The complainant's unit is on the second floor of her building. A light pole is located outside of her bedroom window and contains a lightbulb, which is positioned at eye level to the window. In December, 2003, the complainant made the first of several requests to the defendants that, as an accommodation to her disabilities, the light outside of her bedroom window be turned off at night so that her sleep would not be disturbed. These requests were supported by letters from health care providers detailing her medical need for such accommodation. Her requests went unanswered until the end of June, 2004, when the lightbulb apparently burned out; it was replaced, however, in September, 2005, and remained on at night. In February, 2006, the

---

[2] On review of an action on a motion to intervene, we take all the allegations of the complaint as true. *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 457, 904 A.2d 137 (2006).

complainant again requested that the light be turned off at night, and in March, 2006, the defendants denied this request in writing, stating that it was necessary to keep the light on for safety reasons.

Because of her impaired physical mobility, the complainant must use the elevator, which is located in the front of the building. In the front of the building, there are six parking spaces, four of which are designated as handicapped spaces and two of which are open to any resident or visitor. The closest door to these spaces leads directly to the elevator. Several physically impaired residents customarily use these six spaces, rendering them unavailable to the complainant. There is another parking space directly across the lot from the six spaces, located in front of a garage. The complainant often used this space because it was the next closest to the front door and elevator, but, because it was not reserved for her, she could not rely on its being available to her.

In January, 2005, the complainant made the first of several requests to the defendants that, as an accommodation to her physical disabilities, the parking space near the garage be reserved for her. These requests were supported by a letter from her medical provider detailing her need for a reserved space as a reasonable accommodation for her disability and by a letter from a center for advocacy for disabled persons. In November, 2005, the authority denied her request in writing, on the ground that there were sufficient handicapped parking spaces for her use.

On May 12, 2006, the complainant, represented by attorneys Kevin J. Brophy and David S. Stowe of Connecticut Legal Services, Inc., filed an administrative complaint with the commission, alleging discriminatory housing practices on the basis of the defendants' alleged

failure to grant her reasonable accommodations in violation of various provisions of the General Statutes[3] and the federal Fair Housing Amendments Act of 1988, 42 U.S. §§ 3601 through 3631. On November 21, 2006, during the investigation phase of the administrative proceedings, the defendants granted the complainant both accommodations. The light outside her unit is turned off at 8 p.m. and remains off until the morning, and she has been provided a suitable reserved parking space.

Although the complainant had been provided the reasonable accommodations that she had sought, she and the defendants could not agree on damages and attorney's fees. On March 30, 2007, the commission found reasonable cause to believe that the defendants had discriminated against the complainant. See General Statutes § 46a-83 (d) (2). On April 5, 2007, the defendants requested that the commission institute a civil action pursuant to § 46a-83 (d) (2). The commission complied, alleging specifically that it brought "this civil action on behalf of [the complainant] pursuant to [General Statutes] §§ 46a-83 (d) and 46a-89 (b)," and referred specifically to the complainant's previous administrative complaint invoking, not only the state statutory scheme, but also the federal Fair Housing Amendments Act of 1988. The commission alleged further in the complaint that, although the defendants had instituted the requested accommodations, as a result of the defendants' discrimination, the complainant "has and will continue to suffer damages including, but not limited to, financial loss associated with remedies to alleviate the failure of [the] [d]efendants to grant her reasonable accommodations, mental and emotional distress, humiliation and embarrassment, and attorney's fees." As a result, the commission sought an award of damages pursuant to General Statutes §§ 46a-86 and 46a-89 (b) (2), an award of a civil penalty, equitable relief and

---

[3] See, e.g., General Statutes §§ 46a-58 (a) and 46a-64c.

punitive damages pursuant to § 46a-89 (b), an award of costs and reasonable attorney's fees pursuant to § 46a-86 (c), interest on amounts owed pursuant to General Statutes § 37-3a and "such other relief as is just and proper."

The complainant, represented by her two attorneys of Connecticut Legal Services, Inc., moved to intervene in the action, alleging that the court's judgment in the matter "will substantially impact [the complainant's] rights." She claimed that she had the right to intervene or, in the alternative, that she should be permitted to intervene. The defendants objected to the motion. Without deciding whether the complainant was entitled to intervention as of right or should be afforded permissive intervention,[4] the court denied the motion.[5]

## I

Before addressing the merits of the complainant's appeal, we provide a brief overview of the relevant parts of the general statutory schemes—state and federal—governing the process for housing discrimination complaints such as those of the complainant in the present

---

[4] The court stated: "Though the motion to intervene did not state whether she sought to intervene as of right or permissively, this court did not consider the distinction between the two forms determinative to her ruling, given the circumstances presented. Specifically, the court was persuaded that the pursuit of her interests would not be impaired if her motion were denied. Permitting the intervention, however, offered the very real potential of delaying any relief to [the complainant] (to her prejudice) because it was likely that the appearance of additional counsel . . . would delay discovery, create additional pleadings, and necessitate both the court and courthouse staff spending considerably more time adjudicating and administrating those further pleadings and disputes. Since the [complainant] initially filed her complaint in May, 2006, the undersigned believed that the balancing of all of these factors dictated denial of the motion."

[5] Because, as we conclude, our scope of review over the question of whether the complainant had a right to intervene on the basis of statute is plenary, and because the court declined to determine whether the complainant was entitled to intervention as of right, we need not discuss the reasons for the court's denial of her motion to intervene.

case. General Statutes §§ 46a-64b and 46a-64c set out in broad terms the prohibition against discrimination in housing on the basis, inter alia, of physical disability. Pursuant to General Statutes § 46a-82, a complainant may, either pro se or through an attorney, file with the commission a complaint of such discriminatory treatment. After service on the respondents and the filing of an answer by them, the commission determines the most appropriate method of processing the complaint, which may include mediation, fact-finding conferences, a complete investigation or any combination thereof. General Statutes § 46a-83 (a), (b) and (c). The aims of these procedures are "promoting the voluntary resolution of complaints or determining if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. . . ." General Statutes § 46a-83 (c). In this context, "reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint. . . ." General Statutes § 46a-83 (c). Upon a finding of reasonable cause, two alternative procedures become available, namely, administrative and judicial procedures. See General Statutes § 46a-83 (d) (2).

The administrative route is governed by General Statutes § 46a-84. Under this procedure, upon a finding of reasonable cause, the complaint is certified to the commission's executive director and the attorney general, and an administrative hearing is set up to adjudicate the complaint before a hearing officer appointed by the chief human rights referee. See generally General Statutes § 46a-84 (a), (b) and (c). Pursuant to § 46a-84 (d), the case in support of the complaint is presented by the attorney general or by a commission legal counsel. Significantly, however, the same statutory subdivision provides that the "complainant may be represented by

an attorney of the complainant's own choice," and that if the attorney general or commission counsel "determines that the interests of the state will not be adversely affected, the attorney for the complainant shall present all or part of the case in support of the complaint. . . ." General Statutes § 46a-84 (d). Upon a finding of housing discrimination, the relief available includes damages, attorney's fees and other specified remedial relief. See General Statutes § 46a-86.

The judicial route, by contrast, is governed by §§ 46a-83 (d) (2) and 46a-89 (b). Pursuant to § 46a-83 (d) (2), upon a finding of reasonable cause, either the complainant or respondent may "elect a civil action in lieu of an administrative hearing" as described previously pursuant to § 46a-84. Upon such a request, the commission "shall commence an action pursuant to [§ 46a-89 (b)]. . . ." General Statutes § 46a-83 (d) (2). Significantly, however, the same subdivision specifically provides, moreover, that such civil action "shall be limited to such claims, counterclaims, defenses or the like that would be required for the commission to have jurisdiction over the complaint had the complaint remained with the commission for disposition. . . ." General Statutes § 46a-83 (d) (2). Section 46a-89 (b), which is invoked by the request for a civil action pursuant to § 46a-83 (d) (2), provides for a civil action that could yield appropriate injunctive relief, damages, including attorney's fees under § 46a-86 (c), punitive damages payable to the complainant and civil penalties payable to the state. It was this judicial route that the defendants invoked in the present case.

Furthermore, as an adjunct to this judicial route, the complainant may completely bypass the administrative route and bring a direct civil action in the Superior Court, under General Statutes § 46a-98a, for a violation of § 46a-64c. In that proceeding, the court has the same powers to "grant any relief which a presiding officer

may grant in a proceeding under section 46a-86 or which the court may grant under section 46a-89. . . ." General Statutes § 46a-98a. Significantly, this statutory provision specifically provides that the "commission . . . may intervene as a matter of right in any action brought pursuant to this section." General Statutes § 46a-98a.

In addition, our housing discrimination statutes must be read against a backdrop of similar federal legislation, namely, the federal fair housing laws. This is so for three reasons. First, the genealogy of our fair housing statutory scheme compellingly demonstrates that it is intended to be substantially equivalent to the federal fair housing act of 1988. See *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 384 n.9, 385 n.10, 870 A.2d 457 (2005). Second, our courts have long held that, "in addressing claims brought under both federal and state housing laws, we are guided by the cases interpreting federal fair housing laws; 42 U.S.C. §§ 3601 through 3631; despite differences between the state and federal statutes. *Zlokower* v. *Commission on Human Rights & Opportunities*, 200 Conn. 261, 264, 510 A.2d 985 (1986)." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 591, 775 A.2d 284 (2001). Third, the complainant's claims are based, not just on state law, but on federal law as well.

It is useful, therefore, first to outline how the federal fair housing statutory scheme operates, which is very similar to our statutory scheme. The complainant has a right to file a complaint with the secretary of the United States Department of Housing and Urban Development (department), which investigates the complaint. 42 U.S.C. § 3610. After conciliation[6] by the

---

[6] Conciliation is "the attempted resolution of issues raised by a complaint, or by the investigation of such complaint, through informal negotiations involving the aggrieved person, the respondent, and [the department]." 42 U.S.C. § 3602 (*l*).

department has failed, if it issues a finding of reasonable cause to believe that housing discrimination has taken place, it then issues a "charge," which is essentially a brief statement of the facts supporting the finding of reasonable cause. 42 U.S.C. § 3610. The issuance of the charge triggers either an administrative or a judicial procedure. 42 U.S.C. § 3610.

Under the administrative route, the charge is litigated before a federal administrative law judge. 42 U.S.C. § 3612 (b). At that hearing, each party "may appear in person, be represented by counsel, present evidence, cross-examine witnesses" and secure the issuance of subpoenas. 42 U.S.C. § 3612 (c).

Under the judicial route, either the complainant or the respondent may elect "to have the claims asserted in that charge decided in a civil action under [42 U.S.C. § 3612 (o)] . . . ." 42 U.S.C. § 3612 (a). Upon such an election, the United States attorney general "shall commence and maintain, a civil action on behalf of the aggrieved person" in the federal District Court; § 42 U.S.C. § 3612 (o) (1); and any "aggrieved person . . . may intervene as of right in that civil action." 42 U.S.C. § 3612 (o) (2); see also 42 U.S.C. § 3614 (e) ("any person may intervene in a civil action commenced by the Attorney General . . . which involves an alleged discriminatory housing practice with respect to which such person is an aggrieved person"). In addition, similar to our state scheme, a complainant may bypass the administrative route entirely by bringing a civil action in the federal District Court pursuant to 42 U.S.C. § 3613.

It is apparent, therefore, that with respect to the issue in the present case, the most significant difference between the federal and state statutory schemes is that, unlike the state scheme, the federal scheme specifically provides for a right of intervention by any aggrieved person in the action brought by the attorney general

upon the request of either the complainant or the respondent. This provision was inserted into the federal statutory scheme in 1988.

In 1990, the General Assembly enacted a comprehensive revision of our fair housing laws, namely, Public Acts 1990, No. 90-246, titled "An Act Adopting A Comprehensive Connecticut Fair Housing Statute Conforming To The Federal Fair Housing Act." As our Supreme Court said in a closely related context: "Our construction of § 46a-64c (f) is consistent with the federal courts' interpretation of the analogous provision of Title VII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq. The genesis of and purpose behind Connecticut's current fair housing statute are reflected in the title of the enacting legislation, 'An Act Adopting the Comprehensive Connecticut Fair Housing Statute Conforming to the Federal Fair Housing Act'; Public Acts 1990, No. 90-246 (P.A. 90-246); which was codified as § 46a-64c. As then Senator Richard Blumenthal remarked at the adoption of the legislation, '[t]his is landmark legislation . . . that sets out a separate fair housing act with all the standards and assurances that exist under Federal law. Indeed, it incorporates the federal standards into our state statute . . . .' 33 S. Proc., Pt. 11, 1990 Sess., p. 3494. With the intent of creating a state antidiscrimination housing statute consistent with its federal counterpart, the legislature adopted § 46a-64c and related provisions." *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.,* supra, 273 Conn. 384–85.

The provisions of that legislation are now critical parts of our fair housing scheme. See, e.g., General Statutes §§ 46a-64b and 46a-64c. One of the purposes of this legislation was for the commission to achieve federal certification as a "substantially equivalent agency" under the Federal Fair Housing Amendments

Act of 1988. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1992 Sess., p. 1551, letter from Philip A. Murphy, Jr., commission counsel, commission on human rights and opportunities, to members of the judiciary committee, March 23, 1992. As a result of this legislation, the commission is such a certified agency.

The concept of a state agency being certified by the federal government as a "substantially equivalent agency" derives from the 1988 federal legislation. That legislation created the fair housing assistance program (assistance program), which is designed to foster a "coordinated intergovernmental enforcement effort to further fair housing" and to encourage state agencies to share a greater role in the administration and enforcement of fair housing laws. 24 C.F.R. § 115.300. Participation in the assistance program is available to states that, through their designated agencies, provide "rights, procedures, remedies, and the availability of judicial review that are *substantially equivalent* to those provided in the federal Fair Housing Act." (Emphasis added.) 24 C.F.R. § 115.201 (a); see also 42 U.S.C. § 3610 (f) (3) (A). Among the benefits of the commission's certification as a "substantially equivalent agency" are federal funding, training and technical assistance from the department, the ability to process complaints filed under both state and federal laws—as in the present case—the creation and maintenance of data and information systems and the ability to develop and to enhance other fair housing projects. 24 C.F.R. § 115.300 et seq. Thus, such certification not only contributes to a more efficient administration of fair housing laws, but it does so with less strain on state resources than would otherwise be the case. With particular respect to the present case, the federal Fair Housing Amendments Act of 1988 specifically provides that a complainant who files a housing discrimination complaint with the department has a right to intervene in any civil

action involving a discriminatory housing practice with respect to which the complainant is aggrieved. 42 U.S.C. § 3614 (e).

With this statutory overview in mind, we turn to the merits of the complainant's appeal. We begin, as we must, with the defendants' claim that the appeal must be dismissed for lack of a final judgment because the complainant has not established a colorable claim to intervention as of right.[7]

## II

It is well established that there are two forms of intervention: (1) intervention as of right and (2) permissive intervention. *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 454, 904 A.2d 137 (2006). It is equally well established that the appealability of a denial of a motion to intervene depends on whether the unsuccessful intervenor has a colorable claim to intervention as of right. Only if she can establish that she has a colorable claim of intervention as of right may she invoke appellate jurisdiction to review the denial of the motion to intervene, and, if she does so, the appellate tribunal adjudicates both the claim to intervention as of right and permissive intervention. Id., 449 n.3. We need not dwell on whether the complainant has established a *colorable* claim of intervention as of right because, as we will explain, we conclude that she is entitled to intervene as of right as a matter of law and, therefore, that there is a final judgment for purposes of appeal.

Intervention as of right gives the person the legal right to be a party to the proceeding that may not be properly denied by the exercise of judicial discretion.

---

[7] Although this court earlier denied the defendants' motion to dismiss the appeal for lack of a final judgment, the defendants have renewed their claim, and, accordingly, we are obliged to consider it because it is jurisdictional. See *King* v. *Sultar*, 253 Conn. 429, 434–35, 754 A.2d 782 (2000).

Permissive intervention means that, although the person may not have the legal right to intervene, the court may, in its discretion, permit her to intervene, depending on the circumstances. One of the ways that a proposed intervenor may establish a right to intervene is by showing that she has such a right derived from statute. See, e.g., *King* v. *Sultar*, 253 Conn. 429, 435, 754 A.2d 782 (2000) (in workers' compensation appeal, right to appeal based on statutory right to intervene in trial court). Furthermore, our scope of review over a claim of intervention as of right is plenary or de novo. *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 454–55. Applying this scope of review, we conclude that our fair housing statutory scheme, read together with its federal statutory backdrop, entitles the complainant to intervene as of right in the present case.[8]

### III

Whether the complainant has a right to intervene on the basis of a statute presents a question of statutory interpretation, over which our scope of review is plenary. *State* v. *Juan L.*, 291 Conn. 556, 566, 969 A.2d 698 (2009). "The process of statutory interpretation involves a reasoned search for the intention of the legislature." *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997). "In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that

---

[8] In this connection, we note that where the question of intervention as of right is based on general jurisprudential principles rather than on whether a statute provides for a right of intervention, our Supreme Court has adopted a four part test to determine whether a party is entitled to intervention as of right. See *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 456–57. We decline to apply that test because, as we will explain, the complainant's right to intervene in this case derives, not from general jurisprudential principles, as in *Kerrigan*, but from the very statutory scheme under which the complainant's claims are to be resolved.

meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 66, 946 A.2d 862 (2008).

We first conclude that, with respect to the issue in the present case, § 46a-83 is sufficiently ambiguous so as not to preclude resort to extratextual sources of its meaning. Put another way, because that statute is silent with respect to the right of the complainant to intervene, there is more than one plausible meaning that can be gleaned from its text, considered in conjunction with other statutes. See *Ruotolo* v. *Tietjen*, 93 Conn. App. 432, 434–35, 890 A.2d 166 (2006) (statute ambiguous within meaning of § 1-2z if language permits more than one plausible meaning), aff'd, 281 Conn. 483, 916 A.2d 1 (2007). We therefore turn to the full panoply of available materials with which to interpret the statutes involved, including, of course, the most important material, namely, the statutory text itself.

We first examine the language of the applicable statutes. We do so in light of several fundamental principles of statutory interpretation. The first is that statutes should be interpreted to carry out their fundamental purpose or purposes. *State* v. *Peeler*, 271 Conn. 338, 436, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). In addition, statutes

should be interpreted so as to form a rational, consistent whole, rather than an irrational and inconsistent statutory scheme. See *Babes* v. *Bennett*, 247 Conn. 256, 268, 721 A.2d 511 (1998). Another principle is that statutes should be interpreted so as to avoid bizarre or unworkable results; *Wallingford* v. *Werbiski*, 274 Conn. 483, 491, 877 A.2d 749 (2005); and courts should interpret statutes on the premise that the legislature intended to accomplish reasonable results. *State* v. *Prazeres*, 97 Conn. App. 591, 597, 905 A.2d 719 (2006). The final principle is that statutes should be interpreted so as to conform to common sense, rather than so as to violate it. Id.

It is true that, as the defendants point out, in our state statutory scheme, there is no specific statutory language providing for a right of intervention. Nonetheless, reading the statutory scheme in light of the fundamental principles of statutory interpretation leads us to conclude that there is an implicit right of the complainant to intervene in the action brought by the commission.

First, one of the purposes of our statutory scheme is to render it substantially equivalent to the federal scheme, in terms of protecting the policy against housing discrimination and the rights of persons subject to such discrimination. *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, supra, 273 Conn. 384 n.9, 385 n.10. It would further that purpose to interpret the scheme to include such a right to intervene, as the federal scheme does, and it would depart from that purpose to interpret the scheme to preclude such a right. In other words, given that the legislature clearly has manifested its purpose to make our statutory scheme substantially equivalent to the federal scheme, when there is ambiguity about whether our scheme provides a right of intervention, it behooves us to resolve that ambiguity consistent with the purpose

of the federal statutory scheme rather than contrary to it.

This conclusion is buttressed by the fact that the complainant's claims are based not solely on state law prohibiting discrimination in housing, but on federal law as well. If the complainant's federal claims had been litigated in the federal forums, she would have been granted intervention as of right in the action brought by the United States attorney general on her behalf in federal District Court; it makes little sense to construe our statutory scheme to say that when the same federal claims are brought by the state attorney general or commission on her behalf in state court, she would not have the same right to intervene.

Second, it is apparent that the complainant has a right to participate as a party in all of the statutory mechanisms for disposition of her claims; see General Statutes §§ 46a-84 and 46a-98a; apart from the particular procedure utilized in the present case, namely, the civil action brought by the commission pursuant to a request made under § 46a-83 (d) (2), and it would be a bizarre result to read the statutory scheme so as to preclude such a right under that one procedure. Put another way, we can conceive of no reason for the legislature to have intended the complainant to have a legal right to participate as a party in all of the other procedures for disposition of her claims but not the present procedure. To read the statutory scheme to include such a right would be to render the overall scheme rational and consistent, whereas to read it to preclude such a right would render it irrational and inconsistent. This is particularly so because, as the statutory scheme demonstrates, the same claims and same defenses are presented in all of the various procedures, both administrative and judicial.

To be specific, if the complainant's claims were litigated via the administrative route pursuant to § 46a-84

(d), where the "complainant may be represented by an attorney of [her] own choice," she would be a party entitled to participate as such. Indeed, in such a case, not only does the complainant have a right to participate as a party, she and her counsel may even take over the prosecution of her claims if the attorney general or commission counsel agree. If the complainant had chosen to bypass the administrative route entirely and bring a civil action pursuant to § 46a-98a, she would be a party entitled to participate as such. If the complainant, instead of the defendants, had requested that a civil action be brought by the commission pursuant to § 46a-83 (d) (2), it is inconceivable that she could be precluded from participating as a party in the action brought at her request and on her behalf; in other words, it would be a truly bizarre and absurd result to hold that in such a case, she does not have a right to intervene.

Similarly, when, as in the present case, it is not the complainant but the defendants—in effect, her adversaries—who elected to have the civil action brought by the commission, it would be a bizarre result to hold that the complainant does not have the same right to intervene and to participate as a party as she undoubtedly has in the other statutorily provided instances for disposition of her claims. To so hold would mean that by electing to race to the courthouse rather than litigating the claims in the administrative forum, the defendants could preclude the complainant—the defendants' adversary—from participating as a party in the judicial forum statutorily designated to adjudicate her claims. This would defy common sense and simple fairness.

Furthermore, reading the statutory scheme to provide for an implicit right to intervene in an action brought pursuant to § 46a-83 (d) (2) would further the important public policy of conserving public resources, whereas reading the scheme to preclude such a right would undermine that public policy. If the complainant

has a right to intervene in such an action, and seeks to do so represented by private counsel of her choice, as in the present case, it is apparent that she and her counsel, not the commission, will shoulder the main burden of prosecuting her claims. This result is supported by the commission's stance that the complainant should be permitted to intervene, partly on the ground that its scarce resources should be spent on cases in which they truly are needed. We should read a statutory scheme so as to further, rather than to undermine, such an important public policy. This is particularly so in the present case, where the only things left to be litigated are the complainant's claims for attorney's fees and damages, matters that are of little direct interest to the commission but of direct and immediate interest to the claimant.

The defendants argue that the complainant has no colorable claim to intervention and, therefore, no right to appeal because there is no specific statute permitting intervention, and, on the merits, she has no entitlement to intervention as of right. We disagree.

The defendants' first contention is that for a right to intervene to be based on a statute, it must be "pursuant to a specific statute"—i.e., a statute that specifically provides for intervention, as under the federal scheme. Thus, the defendants contend, because § 46a-83 (d) (2) provides only for the commission to bring the civil action, the complainant does not have a colorable claim to intervention as of right. This argument, however, overlooks the fact that the civil action that the commission filed in this case was brought on behalf of the complainant. The commission has dual functions: to carry out the antidiscriminatory purposes of the statutory scheme *and* to protect and to vindicate the rights of those discriminated against. *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645, aff'd after remand, 67 Conn.

App. 316, 786 A.2d 1283 (2001). When the commission brings an action pursuant to § 46a-83 (d) (2) on behalf of a complainant—as in the present case—the fact that as a matter of form, it does so in its own name instead of that of the complainant does not mean that it strips itself of its protective and vindicative functions.

Furthermore, we do not read our Supreme Court's jurisprudence on intervention as of right in the restrictive manner urged by the defendants. It is true that in certain cases the court has considered a right to intervene that is based on a specific intervention statute. See, e.g., *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 536, 582 A.2d 1174 (1990) (employer's appealability based on statutory right to intervene in trial court action by employee against third party); *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 323–24, 435 A.2d 352 (1980) (employer denied intervention as of right in employee's third party action because motion for intervention untimely under intervention statute). We know of no case, nor have the defendants cited any, that stands for the proposition that a statutory right to intervene cannot be based on a rational reading of the entire statutory scheme that compels a conclusion of an implied intervention as of right, as in the present case, rather than on a statute providing specifically for intervention. Indeed, our Supreme Court, in a different context, has found a power implied in a statutory scheme despite the absence of any specific language providing for that power. See *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 437–39 (in area of municipal taxation, power to audit implies power to revalue). Nor can we conceive of any good reason for requiring such a restrictive view of intervention as of right based in a statute. A statutory scheme, properly construed, has as much meaning when viewed in its entirety as it does when viewed through a prism focused only on specific language.

The defendants also rely on certain legislative history in the 1990 and 1992 amendments to our fair housing

statutory scheme for the proposition that the legislature did not intend for the complainant to have a right to intervene in an action brought by the commission pursuant to § 46a-83 (d) (2). In 1990, the legislature enacted comprehensive legislation, referred to previously, aimed at gaining substantial equivalence of our statutory scheme with the federal scheme, and the commission counsel again testified in support of the bill.[9] In 1992, the legislature enacted further amendments to maintain our essential equivalency, and the commission counsel again testified in support of the bill.[10] We are not persuaded that this legislative history demonstrates that the legislature considered and rejected a complainant's right to intervene.

---

[9] The commission counsel, Murphy, stated: "The [b]ill also provides a choice of forums. First, there is a private right of action for complainants. Second, the [b]ill provides a choice of forums to the [c]ommission. Depending on the circumstances of the case the [c]ommission can proceed before a hearing officer or in court or both . . . ." Letter from Philip A. Murphy, Jr., commission counsel, commission on human rights and opportunities, to members of the judiciary committee, March 16, 1990.

[10] The commission counsel, Murphy, testified as follows: "[The federal Department of Housing and Urban Development] has reviewed Public Act 90-246 and has identified three areas where they believe our statute does not track the federal Fair Housing [Amendments] Act of 1988. The bill is designed to clarify or add provisions in order to make Connecticut's law coextensive with the federal law. The major changes proposed are . . .

"The third change provides a very limited right for the complainant or respondent to [o]pt for the [commission] to bring its enforcement action in Superior Court as opposed to an administrative hearing. The [commission] does not believe this will be utilized very frequently. In the past two fiscal years, the [commission] received relatively few housing cases, one hundred (100) in [fiscal year] 1990 and sixty-eight (68) in [fiscal year] 1991. Of those cases, there were four (4) public hearings in [fiscal year] 1990 and five (5) in [fiscal year] 1991. The [commission] does not believe that respondents will exercise this option because of the higher penalties available in a court action and that complainants will prefer the hearing process because it is much more expeditious than litigation in court. Furthermore, the complainant has a private right of action, although the [commission] is not aware of any cases in which this right has been exercised. We believe that the complainant will be more likely to proceed under that authority if she or he wishes to proceed in court." Conn. Joint Standing Committee Hearings, supra, pp. 1551–52.

It is true, as the defendants contend, that this history demonstrates that the legislature considered various procedural measures available to the complainant, including requesting the commission to bring a civil action and bringing such an action on her own. We are not persuaded, however, that simply because the legislature focused on other measures and did not mention intervention, it intended to preclude intervention. Indeed, it did not mention either intervention as of right or permissive intervention. Thus, the more plausible inference is not that the legislature considered and rejected intervention as of right, but that it simply did not focus on the matter of intervention—in either form—at all.

Furthermore, it would not be inconsistent with the rights of the complainant to request or to bring a civil action also to have the right to intervene in any action brought by request; indeed, as we discussed previously, it would be on odd result, to say the least, to hold that the person who requested the lawsuit to vindicate her rights could not intervene in it to participate as a party. We do not read this legislative history in such a manner, particularly because it would mean that, as we explained previously, the legislature intended its legislation to yield a bizarre and unfair result. We decline to attribute such an intention to the legislature.

In this connection, the defendants also rely on the axiom of statutory construction that "[t]he court may not, by construction, supply omissions in a statute . . . merely because it opines that good reason exists for so doing. . . . This is especially so where it appears that the omission was intentional. . . . In such a situation, the remedy lies not with the court but with the General Assembly." (Internal quotation marks omitted.) *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001). We do not

dispute the applicability of this axiom in an appropriate case. We conclude, however, that it does not apply to the present case.

First, in the present case we do not imply a right of intervention *"merely* because [we opine] that good reason exists for doing so." (Emphasis added.) Id. We conclude, to the contrary, that the statutory scheme, read rationally and consistently, compels such an implication. Second, in this case we are not persuaded that the legislature intended to omit a right of intervention. Finally, we acknowledge that this axiom, like all rules or canons of statutory construction, serves as an important guideline in determining legislative meaning. To allow it to displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies. See *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 455.

The defendants' contention that, on the merits of the claim for intervention as of right, the complainant has no such right, is based entirely on the four part test for intervention that is founded, not on statute, but on general jurisprudential principles. See *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 456–57. We need not address the question of whether the complainant has met that four part test because, as we have explained, that test does not apply when, as in the present case, the complainant has a right to intervene that is based on statute.

The judgment is reversed and the case is remanded with direction to grant the complainant's motion to intervene and for further proceedings according to law.

In this opinion the other judges concurred.